LEXINGTON NURSING HOME, INC. & another *vs.* RATE
SETTING COMMISSION.

Suffolk.    December 9, 1970. — January 29, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ

*Equity Jurisdiction*, Declaratory relief.    *Nursing Home.*

Provisions of G. L. c. 7, § 30L, as appearing in St. 1963, c. 809, § 1, and
of a regulation of the former Board of Rate Setting requiring a nurs-
ing home to furnish or make available to the board information about
itself and other legal entities in common ownership with it were un-
objectionable.   [     ]

A bill in equity by a nursing home against a State rate setting board
seeking declaratory relief concerning certain pertinent statutory and
regulatory provisions was properly dismissed in the discretion of the
judge where he found that the plaintiff had intentionally and wrong-
fully refused to furnish or make available to the board information
legally sought by it.   [     ]

BILL IN EQUITY filed in the Superior Court on June 3, 1968.

The suit was heard by *Kalus, J.*

*Colette Manoil* for the plaintiffs.

*Harry P. Haveles*, Special Assistant Attorney General,
for the defendant.

TAURO, C.J.    The plaintiffs Lexington Nursing Home,
Inc. and Sudbury Nursing Home, Inc. appeal from the final
decree dismissing their bill in equity which sought certain
declaratory relief concerning statutes governing the Board
of Rate Setting [1] and concerning the 1968 regulations pro-

---

[1] At the times material to this case the statutes and the State agency in-
volved were G. L. c. 7, §§ 30L and 30M, as appearing in St. 1963, c. 809, § 1,
and the Board of Rate Setting (board).   References in this opinion to §§ 30L
and 30M are to them as so appearing.   The original defendant was the board.
Subsequently, a Rate Setting Commission was established by St. 1968, c. 492,
§ 3, and was substituted as defendant.

mulgated by the board. In essence the bill, which we find rather confusing, challenges the validity of certain portions of G. L. c. 7, §§ 30L and 30M, as well as the board's 1968 Regulation 2 which provides for access to information and data in the possession of the plaintiffs.[2]

The trial judge found that the plaintiffs without justification refused to furnish information sought by the board and wrongfully failed to comply with the board's request to make information available, and dismissed the bill.[3]

An examination of the evidence clearly shows an interrelationship between the plaintiffs, the corporation which is under contract to manage the nursing homes, and the owners of the real estate occupied by the plaintiffs. The nursing homes, their management corporation and the owners of real estate occupied by the nursing homes substantially are controlled by Joseph F. Hill, Jr. A minute breakdown as to the entire ramification of this control would serve no useful purpose. Suffice it to say that in 1967 out of a gross income of $472,755 from the Lexington Nursing

----

[2] The pertinent statutory provisions which were intended to assist the board in setting rates were the following (§ 30L): "Each convalescent or nursing home and rest home shall file with the board, from time to time, on request, such data, statistics, schedules or information as the board may reasonably require to enable it to determine the rate or rates. The board shall have the power to examine the books and accounts of any such convalescent or nursing home and rest home, if in its opinion such examination is necessary to determine such rates."

Regulation 2 of the board, to which the plaintiffs specifically object, reads as follows: "Each nursing or convalescent home shall make available to the . . . [b]oard on request such data, statistics, records and books relating to said nursing or convalescent home including such data, statistics, records and books relating to a [r]ealty, [h]olding or [s]ervice [c]ompany or any such legal entity in which there is a common ownership between a nursing or convalescent home and the said [r]ealty, [h]olding or [s]ervice company."

[3] "The court finds that the . . . [plaintiffs] did intentionally and wrongfully refuse to furnish the . . . Board . . . with pertinent requisite information to enable the Board to set the rate for the . . . [plaintiffs] for the year 1968. The court finds that counsel for the . . . [plaintiffs] refused the request of Mr. Lennon, executive secretary to the Board, to turn over the books and records (or make them available) to the Board for audit in order to verify the information contained in the RSB–4 forms filed by the . . . [plaintiffs]. Furthermore, the information furnished by the . . . [plaintiffs] on the RSB–4 forms was incomplete and they refused to complete the forms. In accordance with the finding that the . . . [plaintiffs] intentionally failed to comply as aforesaid, the court rules that the . . . [plaintiffs] have no standing to maintain their bill and orders that their bill be dismissed. Let a decree be entered accordingly."

Home, Inc., approximately $215,500 went either to Hill individually or to his wife or to the companies that he controlled. He paid $144,000 in rent to himself as owner of the land and buildings occupied by that nursing home, $64,000 in management fees to the management corporation also controlled by him, and $7,500 to his wife. In Sudbury, Hill also exercised a substantial measure of ownership and control over the nursing home, the realty trust which owned the land and buildings occupied by the nursing home, and the corporation which managed its affairs.

We find no grounds for the plaintiffs' objections to the requirements set forth in G. L. c. 7, §§ 30L and 30M, or the 1968 regulations. The right under G. L. c. 7, §§ 30L and 30M, to investigate the cost structure of nursing homes is a power necessary for an agency established to determine a fair and reasonable rate for the Commonwealth to pay private nursing homes for publicly aided patients. Indeed, it would be unreasonable and possibly a breach of the public trust for the Commonwealth to accept at face value the alleged costs of doing business from a nursing home corporation when, as here, the transactions between the nursing home, their lessors, and their managers are not at arm's length. See *Westland Housing Corp.* v. *Commissioner of Ins.* 352 Mass. 374, 386–387. Regulation 2 and the RSB–4 and RSB–4A accounting forms to which the plaintiffs object are reasonably designed to elicit essential information pursuant to G. L. c. 7, § 30L, and we perceive no valid objection to them.

In these circumstances the trial judge correctly ruled that the plaintiffs' intentional failure to comply with the requirements of the board was wrongful. Having arrived at this decision the Superior Court, in the exercise of sound discretion, correctly refused to render declaratory relief. G. L. c. 231A, § 3, provides: "The court may refuse to render or enter a declaratory . . . decree where such . . . decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons. The reasons for such refusal shall be stated

in the record." *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370. *Board of Selectmen of Truro* v. *Outdoor Advertising Bd.* 346 Mass. 754, 759.

*Final decree affirmed with costs of appeal.*