CABOT NURSING HOME, INC. *vs.* RATE SETTING COMMISSION.

Suffolk. May 3, 1971. — June 18, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, QUIRICO, & BRAUCHER, JJ.

*Nursing Home. Public Welfare.*

In establishing a per diem rate to be charged for publicly aided patients by a corporation operating a sixty-bed nursing home, the Rate Setting Commission, in considering the corporation's operating costs, properly disallowed as "adjustments not related to patient services" under the commission's rules a sum for salaries, payroll taxes and workmen's compensation insurance for three of the corporation's stockholders where two of them rendered administrative services and the corporation was allowed a smaller sum as "owner compensation," and the third rendered services primarily of a medical nature which should have been billed directly on behalf of specific patients to the Department of Public Welfare [689]; the commission properly disallowed compensation to the corporation's administrator for services as a "cab driver" in transporting employees and patients, the proper amount of which was not shown [689–690]; the commission properly disallowed rent paid to a realty company having the same stockholders as the nursing home corporation, where a sum in excess of such rent was allowed as "original capital costs" [690]; the commission properly disallowed a large amount spent for furnace repairs, where one-fifth thereof was allowed and the remainder thereof would be allowed over the succeeding four years [690]; and the commission properly disallowed expenses attributable to advertising for private patients and to the operation of two corporations rather than one and to counsel fees not shown to have benefited publicly aided patients [690–691].

Upon a review of a decision by the Rate Setting Commission under its rules governing accommodations in nursing homes provided to publicly aided patients, this court held that the commission had properly determined that the plaintiff corporation, operating a nursing home in a city, had not satisfied the burden of showing that the per diem rate established for it for 1968 by the commission was "inadequate or unreasonable as to such home" under G. L. c. 7, § 30L, as amended through

St. 1963, c. 809, § 1, or was not "adequate, fair and reasonable as to such provider based, among other things, on the costs of such provider" under G. L. c. 7, § 300, as appearing in St. 1968, c. 492, § 3. [691]

BILL FOR REVIEW filed in the Superior Court on August 12, 1969.

The case was heard by *Kalus*, J.

*Meyer H. Goldman* for the plaintiff.

*Joseph J. Hurley*, Assistant Attorney General (*Gregor I. McGregor*, Assistant Attorney General, with him) for the defendant.

BRAUCHER, J. The plaintiff operates a sixty-bed nursing home in the Roxbury district of Boston. By letter dated January 5, 1968, the Rate Setting Board (the board) notified the plaintiff that it was entitled to a temporary per diem rate of $8.19 for publicly aided patients, effective January 1, 1968, enclosing a copy of the governing rules of the board dated January 5, 1968 (the rules). Late in March, 1968, pursuant to the rules, the plaintiff submitted to the board a balance sheet as of December 31, 1967, and a statement of operating costs for the calendar year 1967 on a form prescribed by the board (RSB–4). By letter dated May 1, 1968, a permanent per diem rate of $8.44 was substituted for the temporary rate, retroactive to January 1, 1968. On May 10, 1968, the plaintiff notified the board that it claimed an appeal from this determination.

By St. 1968, c. 492, § 3, effective September 12, 1968, the governing statute, G. L. c. 7, § 30L, was struck out and six new sections, §§ 30K–30P, were inserted. The board was abolished and the Rate Setting Commission (the commission) was created. Pending proceedings before the board were to be turned over to the commission. St. 1968, c. 492, § 25. A hearing before a hearing officer of the commission was held on November 6, 1968, and February 13, 1969, and the plaintiff appealed from the findings and rulings of the hearing officer. The appeal was heard by the commission on July 1, 1969, and the plaintiff was notified by letter dated July 16, 1969, of a new rate of $8.02, retroactive to January 1, 1968. The plaintiff sought judicial review, and appeals from a final

decree affirming the decision of the commission. G. L. c. 7, § 30O, as appearing in St. 1968, c. 492, § 3, G. L. c. 30A, §§ 14, 15.

1. The 1968 per diem rate was required by G. L. c. 7, § 30L, as amended through St. 1963, c. 809, § 1, to be "adequate and reasonable," and the person conducting a nursing home could appeal to the board if the rate was inadequate or unreasonable "as to such home." See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Commn. ante,* 652. Compare *Lexington Nursing Home, Inc.* v. *Rate Setting Commn.* 358 Mass. 601, n. 1; *Massachusetts Gen. Hosp.* v. *Rate Setting Commn. ante,* 157, 164–166. Under G. L. c. 7, § 30O, inserted in 1968, the rate must be "adequate, fair and reasonable as to such provider based, among other things, on the costs of such provider." The parties are in agreement that the procedure in the present case is governed by § 30O, but there is a dispute whether the new section applies substantively to 1968 rates. We need not resolve the dispute, since we think the two standards for rate making mean the same thing. The 1968 revision included the following: "All rates, classifications and other regulations pertaining or relating to general health supplies, care, services and accommodations, as defined in section thirty K of said chapter seven as . . . appearing [in § 3 of this act], . . . in effect immediately prior to the effective date of this act shall remain in full force and effect until superseded or repealed by the rate setting commission in accordance with law." St. 1968, c. 492, § 25. "General health supplies, care, services and accommodations" include "accommodations in . . . nursing homes . . . ." G. L. c. 7, § 30K, as appearing in St. 1968, c. 492, § 3. Both before and after September 12, 1968, rate making begins with the rules of the board, and the plaintiff has the burden of showing that the provisions of the rules or the rates established pursuant to the rules are inadequate, unfair, or unreasonable as to it, taking into account, "among other things," its costs. *Palm Manor Nursing Home, Inc.* v. *Rate Setting Commn. ante,* 652.

2. In accordance with the rules, the commission began with the statement of operating cost for 1967 submitted by the plaintiff on the RSB–4 form. It then disallowed $47,778.45 of expenses as "adjustments not related to patient services" under paragraph 3 (a) of the rules. Substitute amounts were allowed for some of the disallowed items, under the headings "original capital costs" and "owner compensation." The specific dollar amounts are not presented to us in a form which permits easy calculation of their impact on the rate determination, but the principles applied are sufficiently shown. For discussion we group the disallowed items under four headings.

*Salaries.* A sum of $27,538.67 in salaries, payroll taxes and workmen's compensation insurance for three stockholders of the plaintiff was disallowed. Two were treated as rendering administrative services, to be compensated under the heading "owner compensation." Eleven thousand sixty dollars was allowed under that heading, in accordance with a schedule included in the rules showing amounts varying with numbers of beds. The third stockholder was found to be rendering services primarily of a medical nature, which should be billed directly on behalf of specific patients.

The commission could properly refuse "to accept at face value the alleged costs of doing business from a nursing home corporation when, as here, the transactions between the nursing home, their lessors, and their managers are not at arm's length." *Lexington Nursing Home, Inc.* v. *Rate Setting Commn.* 358 Mass. 601, 603. The evidence presented to the commission, which is before us, did not compel a finding either that the salaries paid by the plaintiff were necessary and reasonable or that the amount scheduled in the rules was inadequate or unreasonable. See *G & M Employment Serv. Inc.* v. *Commonwealth,* 358 Mass. 430, 441–443, app. dism. sub nom. *G & M Employment Serv. Inc.* v. *Department of Labor & Indus.* 402 U. S. 968. The plaintiff claims that its administrator should have been allowed compensation for, among other things, special services including services as a "cab driver" in transporting employees and patients, and

the commission did allow an item of "travel allowance" for transportation "to and from a hazardous section of the city where bodily harm and losses may incur." Paragraph 6 of the rules would allow compensation for patient services performed by an owner if the compensation is reasonable and the service bona fide, but no showing was made as to the proper amount.

*Rent.* The commission disallowed $18,000 of rent paid to a realty company having the same stockholders as the plaintiff. The plaintiff claims that, if this rental is disallowed because not at arm's length, some $12,000 of expenses of the realty company should have been allowed instead. But the plaintiff neglects the fact that the commission allowed, under the heading "original capital costs," more than $16,000 based on fifteen per cent of the realty company's investment in land and buildings. This allowance more than covered the claimed costs of the realty company.

*Repairs.* The plaintiff claimed $5,282.80 for furnace repairs as an expense. The commission disallowed this on the ground that it was not an ordinary or recurring item, but allowed one-fifth of it and stated that the remainder would be allowed equally over the succeeding four years. The plaintiff claims that it should have been allowed because "this was an emergency repair job." Emergency or not, the commission found that "this improvement of $5,282.80 has prolonged the life of the furnace," and we cannot say that the finding was unsupported by substantial evidence. G. L. c. 30A, § 14 (8) (e).

*The patient care requirement.* The plaintiff contends that nothing in the rules or the applicable statutes limits allowable expenses to items relating directly to patient care. But paragraph 3 (a) of the rules provides for "[a]llowable [o]perating [c]osts per RSB-4 less . . . adjustments not related to patient services," and we think the statutory standard contemplates consideration of those costs related to the care of the publicly aided patients for whom payment is to be made. It follows that the commission was justified in disallowing expenses attributable to advertising for private

patients and to the operation of two corporations rather than one and counsel fees not shown to have benefited publicly aided patients.

3. The plaintiff failed to show that the $8.02 rate established for it was "inadequate or unreasonable as to such home" under G. L. c. 7, § 30L, as amended through St. 1963, c. 809, § 1, or that the rate was not "adequate, fair and reasonable as to such provider based, among other things, on the costs of such provider" under G. L. c. 7, § 30O, as appearing in St. 1968, c. 492, § 3. The commission properly so determined.

*Decree affirmed with costs of appeal.*