LOUIS GOLDBLATT *vs.* CORPORATION COUNSEL OF BOSTON & others.[1]

Suffolk.   October 7, 1971. — December 17, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Equity Jurisdiction*, Declaratory relief.  *Certiorari.  Equity Pleading and Practice*, Parties.  *Civil Service.  Attorney at Law.*

Absent special circumstances, review of a Civil Service Commission decision upholding an appointment to a civil service position may not be pursued by means of a suit for declaratory relief circumventing the normal method of review by certiorari. |662–664|

Even in a suit for declaratory relief in appropriate circumstances, if the controversy involves the propriety of actions of the director of civil service and of the Civil Service Commission, they are necessary parties. |664|

Representing a city in the Land Court and advising as to the legal validity of tax titles may only be performed by an attorney even though such work is to be supervised. |665|

An appointing authority, in the exercise of sound discretion, may select among persons eligible for a civil service position or may decline to make any appointment. |666|

BILL IN EQUITY filed in the Superior Court on July 3, 1969.

A demurrer and pleas in bar were heard by *Mitchell*, J. The case was heard on the merits by *DeSaulnier*, J.

*Mack K. Greenberg*, Assistant Corporation Counsel, for the Corporation Counsel of the City of Boston.

*James W. Kelleher* for Edward F. Riley.

*Monroe L. Inker* (*Charlotte A. Perretta, Edward M. Dangel & Leonard Poretsky* with him) for Louis Goldblatt.

CUTTER, J.  Mr. Goldblatt, an attorney, seeks declaratory relief with respect to the actions of Boston's Corporation Counsel (Mr. Herbert P. Gleason), as appointing authority, in attempting to fill the position of senior legal assistant

---

[1] (1) Edward F. Riley, (2) Edmund W. Holmes, collector-treasurer of Boston, and (3) Mabel A. Campbell, director of civil service.  A demurrer and plea in bar by the director of civil service and similar pleadings by the collector-treasurer were sustained.

in Boston's law department. One Superior Court judge overruled Mr. Gleason's demurrer and plea in bar to the bill for declaratory relief. The plea of Edward F. Riley, who was appointed to the position, also was overruled. Another Superior Court judge in findings, rulings, and an order for decree declared invalid the appointment of Riley to the position and ordered that Mr. Goldblatt be appointed to the position. A final decree was entered in accordance with that order. Mr. Gleason and Riley appealed from the final decree and from the several interlocutory rulings adverse to them, respectively. The evidence is reported. There is a report of material facts with respect to the overruling of the pleas. The essentially undisputed facts are stated on the basis of the judges' findings except as otherwise indicated below.

Mr. Goldblatt has been employed for thirty-five years by the city. Since 1939 he has held a civil service position in the city's law department. Riley is not a member of the bar. The evidence shows that he is not a graduate of a law school or of a college but that he has had long experience in dealing with tax titles. He is now, by virtue of the disputed appointment, a senior legal assistant in the law department. He was given a temporary appointment to that post upon the retirement of a member of the Massachusetts bar who formerly had held the position.

The director of civil service (acting under G. L. c. 31, § 8) announced an examination for promotion to the vacant position, describing those eligible to take the examination. The announcement did not provide that in order to be eligible a candidate must be a member of the bar. Both Riley and Mr. Goldblatt were within the class described as eligible. The duties of the position were described (emphasis supplied), "Duties: *Under supervision,* to advise the Real Property Board regarding foreclosed tax title[s] and to draw up deeds on foreclosed real estate; *to represent the City of Boston before the Land Court* in all matters pertaining to real estate; *to advise* the Collector-Treasurer *as to the validity*

*of tax titles*; to examine titles in the Registry of Deeds; and to perform related work as required." Only two candidates, Riley and Mr. Goldblatt, took the examination. Each passed but Mr. Goldblatt received the higher grade. Mr. Gleason, the appointing authority, selected Riley for the position and submitted (see G. L. c. 31, § 15, par. C, as amended by St. 1955, c. 643, § 9) a statement of reasons for selecting Riley (instead of Mr. Goldblatt whose name appeared at the top of the list of persons certified). The director of civil service "approved the selection and later upheld the appointment . . . [against Mr. Goldblatt's] challenge to it." Mr. Goldblatt's appeal (G. L. c. 31, § 2 [b]) to the Civil Service Commission (the commission) was denied unanimously.[2]

The reported evidence discloses that, despite the job description (quoted above), announced by the director of civil service, the duties in fact performed by Riley are largely routine investigatory, administrative, and clerical operations carried out under the direction and supervision of the Corporation Counsel and those of his associates who are members of the bar. Riley was the sole witness. He testified that he did not appear before the Land Court and that his advice on legal matters relating to tax titles was (like his other work) subject to supervision by lawyers. A good deal of this other work involved checking tax title documents, statistical work, supervising clerical work, checking notices and procedure, and considering the possibilities of collection through taking over a property and collecting its rents. One lawyer works under his supervision and handles the Land Court cases.[3]

1. The first question for resolution is whether this con-

---

[2] Mr. Goldblatt through counsel asked the commission to be allowed to present testimony and documentary evidence. The commission's chairman ruled that Mr. Goldblatt could not present evidence. Mr. Goldblatt was permitted to file a brief.

[3] The judge who heard the case on the merits made no substantial findings on this aspect of the case, possibly because he deemed the job description to be determinative rather than the work which Riley actually did.

troversy is properly presented by a bill for declaratory relief under G. L. c. 231A. A subsidiary question is whether all necessary parties are before the court. Mr. Gleason and Riley contend that, if a bill for declaratory relief can be maintained, the director of civil service and the commission are necessary parties.

The record incompletely describes the pertinent facts concerning Mr. Goldblatt's administrative appeal to the commission. In any event, he now attempts to circumvent the normal method of review of the commission's decision, which would be by certiorari. See *School Comm. of Salem* v. *Civil Serv. Commn.* 348 Mass. 696, 697–698. See also *DiRado* v. *Civil Serv. Commn.* 352 Mass. 130, 132–135. This is not a case where an appeal lies within G. L. c. 31, § 45 (as amended through St. 1955, c. 407, § 2; see later amendment by St. 1970, c. 711), for that section relates only to commission action with respect to a civil service employee who has been "discharged, removed, suspended, laid off, transferred or lowered in rank or compensation, or whose office . . . was abolished."

Certiorari in the circumstances provides an adequately broad remedy to permit Mr. Goldblatt to show, if it be fact and if it be material, that the commission arbitrarily declined to receive evidence. This alleged failure appears to be one of his contentions. The commission's return to any writ of certiorari should be sufficiently complete to disclose the nature of its action with respect to Mr. Goldblatt's request that it receive evidence and whether the commission's actions or conclusions were warranted by the evidence. See G. L. c. 249, § 4 (as amended through St. 1963, c. 661, § 1). If the commission's return in fact had proved to be inadequate, appropriate requests for a wholly sufficient extension of the record could have been made. See *Southwick Birds & Animals, Inc.* v. *County Commrs. of Worcester County, ante,* 133, 134, fn. 1. See also *DiRado* v. *Civil Serv. Commn.* 352 Mass. 130, 132–133. We do not suggest that, in this area, declaratory relief is never available to test the right of a civil service appointee to hold his

office or to obtain decision of some issue concerning commission policies and actions of wide application or general concern.   Compare *Meenes* v. *Goldberg*, 331 Mass. 688, 690–692; *Squantum Gardens, Inc.* v. *Assessors of Quincy*, 335 Mass. 440, 443; *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 87–88.   No special circumstances, however, appear on this record which make such action appropriate or which reveal any necessity for departure from the use of certiorari, the normal method of review.   See *Nearis* v. *Gloucester*, 357 Mass. 203, 205. Many of the same considerations are here present which have led us to deny declaratory relief, where adequate and useful administrative remedies have seemed more appropriate.   See *Selectmen of Truro* v. *Outdoor Advertising Bd.* 346 Mass. 754, 759–760.   See also *Lexington Nursing Home, Inc.* v. *Rate Setting Commn.* 358 Mass. 601, 603–604.

We perceive, also, no way in which issues of concern to the Civil Service Commission or the director of civil service may properly be determined finally without their participation.   Because the demurrer and plea of the director of civil service were sustained, neither the commission nor any representative of the commission has participated in this case before this court.   Unlike *Seskevich* v. *City Clerk of Worcester*, 353 Mass. 354, 357, the present controversy involves the propriety of actions of the director of civil service and of the commission, which more appropriately may be dealt with by direct review of those actions.   In the circumstances, even if declaratory relief had been appropriate at all, there was a clear failure to continue as parties persons with important interests likely to be affected.   See *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370.   Cf. *S. C.* 345 Mass. 488, fn. 1.   Mr. Gleason's demurrer and his and Riley's pleas should have been sustained or the judge should have taken appropriate action under G. L. c. 231A, § 3.   See *Marmer* v. *Board of Registration of Chiropractors*, 358 Mass. 13, 17, 18; *Lexington Nursing Home, Inc.* v. *Rate Setting Commn.* 358 Mass. 601, 603–604.

2. Although the interlocutory and final decrees must be reversed, two substantive issues have been fully argued by the parties most directly concerned with them. If we state our views upon these issues, it may expedite the disposition of this and possible future litigation. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.

The job description (already quoted), literally read, describes duties which may be performed only by a member of the Massachusetts bar, even though the work is to be performed "[u]nder supervision." Only an attorney may represent the city before the Land Court. Only an attorney may advise as to the legal "validity" of tax titles. See *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 179–181, 183. See also fn. 4, *infra*, and authorities there cited. We assume that persons, who are not attorneys, may do research in the registries of deeds, make reports (and even recommendations) to attorneys, and give practical advice with respect to the possibilities of collecting particular taxes. Lay employees, however, may not engage in duties for their employers or supervisors which involve the practice of law. See G. L. c. 221, § 46A, inserted by St. 1935, c. 346, § 2.

The job description, as written, cannot reasonably be construed otherwise than as requiring the services of an attorney. Riley is not qualified to fill a position thus described. In view of the duties actually expected of him, the job description probably is an improperly inflated description of his functions, perhaps designed to justify a civil service classification and a salary higher than those warranted by the duties of the office.[4] In appropriate pro-

---

[4] Obviously, the public interest will not be served by requiring that routine duties be performed by attorneys when laymen could adequately and more economically perform the functions. See *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 180–181. See also *Opinion of the Justices*, 289 Mass. 607, 615; Am. Bar Assn. Code of Professional Responsibility, Canon No. 3, par. EC 3–6 (July, 1969); Am. Bar Assn. Supp. (June, 1968) to Opinions (1967) of the Committee on Professional Ethics, p. 2; annotation, 53 A.L.R. 2d 788. Nevertheless, the present job description goes beyond the limits of what is permitted even to supervised laymen.

ceedings, the occupancy of the office by a person not an attorney may be terminated. Doubtless also the job description may be amended and suitably restricted (or a new job classification perhaps may be created, if that be appropriate) so that, after further proceedings before the director and the commission and a new examination, a lay employee may be eligible for it.

On a further issue we may now usefully state our views. The appointing authority, in circumstances such as those before us, may not be required to appoint any person to a vacant post. He may select, in the exercise of a sound discretion, among persons eligible for promotion or may decline to make any appointment. See *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 187–193. See also *Corliss* v. *Civil Serv. Commrs.* 242 Mass. 61, 65; *Seskevich* v. *City Clerk of Worcester*, 353 Mass. 354, 356; *Starr* v. *Board of Health of Clinton*, 356 Mass. 426, 430–431. Cf. *Younie* v. *Director of Div. of Unemployment Compensation*, 306 Mass. 567, 571–572. A judicial judgment should "not be substituted for that of . . . [a] public officer" who acts in good faith in the performance of a duty. See *M. Doyle & Co. Inc.* v. *Commissioner of Pub. Works of Boston*, 328 Mass. 269, 271–272.

3. The interlocutory decrees and the final decree are reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion, which may include suitable amendments of the bill or its dismissal. See G. L. c. 231, §§ 51–56, as amended; c. 213, § 1C (inserted by St. 1943, c. 374, § 4). See also *Athas* v. *Mayor of Holyoke*, 356 Mass. 382, 385.

*So ordered.*