**Francis J. BURNS, Plaintiff-Appellant,**

v.

**James Leo SULLIVAN et al.,
Defendants-Appellees.**

**No. 79–1424.**

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1980.

Decided March 31, 1980.

John A. Moos, Boston, Mass., with whom Richard L. Zisson and Zisson & Veara, Boston, Mass., were on brief, for plaintiff-appellant.

Kenneth A. Behar, Boston, Mass., with whom Edward D. Kalman, Barbara J. Sproat and Behar & Kalman, Boston, Mass., were on brief, for defendants-appellees.

Francis X. Bellotti, Atty. Gen., Boston, Mass., with whom John F. Hurley, Jr., Asst. Atty. Gen., Boston, Mass., was on brief, for Personnel Administrator for the Division of Personnel Administration for the Commonwealth of Massachusetts, defendant-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant, Francis J. Burns, a white policeman employed by the City of Cambridge Massachusetts, brought suit in June of 1978 against James L. Sullivan, City Manager of Cambridge, Walter J. Sullivan (not related to James L.), a Cambridge city councilor, and Walter Kountze, Personnel Administrator of the Division of Civil Service of the Commonwealth of Massachu-

setts.[1] Burns alleged that the defendants had violated his constitutional rights in July of 1975 by promoting over him to the rank of sergeant twenty-two other applicants, including three blacks, whose names appeared below his on the civil service eligibility list for promotion. After considering the pleadings, affidavits from the defendants and depositions from others, the district court granted the motion of the defendants Sullivan for summary judgment.

On appeal, Burns contends the district court erred in granting summary judgment on his claims that he (1) was denied due process by the promotion rating system ratified by James L. Sullivan; (2) was denied equal protection by James L. Sullivan's decision to promote three blacks, among others, over him; and (3) suffered violation of his first amendment rights because of the advice he sought and received from Walter J. Sullivan subsequent to his non-promotion.

We affirm the district court's findings that Burns was not deprived of due process of law by the promotion procedure used by Cambridge and that Walter J. Sullivan did not violate Burns' first amendment rights. We also find that, since the applicable Massachusetts racial discrimination statute of limitations expired long before Burns filed suit, the district court lacked jurisdiction to hear Burns' equal protection claim.

*The Facts*

In October, 1973, one hundred ten Cambridge policemen seeking promotion to sergeant took a written civil service examination to determine eligibility for promotion. In April, 1974, the Director of Civil Service of the Commonwealth promulgated a list of seventy-three persons determined on the basis of the examination results to be eligible for promotion.[2] The list ranked appli-

---

1. Burns agreed to Kountze's motion to be designated a nominal party pursuant to *DeLuca v. Sullivan*, 450 F.Supp. 736, 741 (D.Mass.1977). Kountze subsequently resigned as Personnel Administrator and was succeeded by David Marchand, who was automatically substituted for Kountze as a defendant. Fed.R.Civ.P. 25(d)(1).

2. Under Massachusetts civil service law, the Director of Civil Service was the appointing authority for municipal as well as state civil servants. *See* Mass.Gen.Laws Ann. ch. 31, §§ 1 *et seq.* The Division of Civil Service was abolished in 1975 and replaced by a Personnel Administrator for the Commonwealth. *See* 1974 Mass. Acts ch. 835.

cants from highest to lowest according to their score on the examination; Burns ranked ninth.

In July, 1974, five black Cambridge policemen filed suit alleging racial discrimination in the hiring and promotional procedures of the Cambridge Police Department. *See Kantor v. Sullivan*, C.A. No. 74–2662–T (D.Mass.). A consent decree entered into in June of 1975 to resolve that suit provided that twenty-eight persons on the eligible list would be promoted to sergeant. Shortly thereafter, Cambridge Police Chief Pisani[3] requested the names of eligible applicants from the Massachusetts Department of Civil Service and received the names of the top forty persons on the list, as well as instructions authorizing him to interview the "proposed appointees."[4]

Chief Pisani subsequently conducted brief interviews with the forty remaining applicants, rating each on the basis of attitude and loyalty, judgment, leadership and supervisory abilities, initiative and resourcefulness and technical skills. By combining this oral examination score (on which Burns ranked thirty-seventh) with the scores from the written examination (on which Burns ranked ninth), Chief Pisani apparently created a new score by which he ranked the forty applicants.[5] The names of the twenty-eight persons with the highest scores were sent to and approved by City Manager Sullivan. The Personnel Administrator of the Commonwealth approved the appointments in July of 1975. Three persons listed among the top twenty-eight applicants on the original promotion eligibility list, including Burns, were not promoted to sergeant. The twenty-two persons promoted over Burns included three black policemen who were plaintiffs in *Kantor*. One of the black policemen, Herbert E. Halliday, ranked thirtieth on the original eligibility list. Pursuant to Massachusetts law,[6] which requires an explanation under such circumstances, City Manager Sullivan stated that the reason for appointing the twenty-two persons not ranked highest on the original eligibility list was that the appointees were "better qualified." The Personnel Administrator accepted this explanation in making the appointments.

Burns became aware on July 3, 1975, that he had been passed over for promotion. Under Massachusetts law, he had two statutory avenues of appeal from this decision. Massachusetts civil service law provides an automatic right of appeal to the Civil Service Commission for persons unsuccessful in gaining appointment or promotion. Mass.

---

**3.** Chief Pisani died prior to the initiation of this suit and, accordingly, was not named as a defendant.

**4.** A 1974 study of the Cambridge Police Department by the International Association of Chiefs of Police criticized the Department's "abdication" of applicant evaluation to the State Civil Service Commission and recommended that the Department conduct oral interviews as part of the promotion process.

**5.** It is not clear what formula, if any, Chief Pisani used to select the final twenty-eight appointees. A formula giving equal weight to the oral and written examinations ranked Burns higher than Terramacco, who was promoted to sergeant. The three other promotees who ranked below the first twenty-eight applicants on the list that gave equal weight to the oral and written examinations were Kantor, Benson and Halliday, three of the black plaintiffs in *Kantor v. Sullivan*. *See* Exhibit B–2, *Burns v. Sullivan*, 473 F.Supp. 626 (D.Mass.). One possible explanation for the promotion of these four persons is that Chief Pisani used a formula giving a weight of ten percent to the applicant's potential for future promotion, as recommended by the 1974 report of the International Association of Chiefs of Police (IACP). However, we find no mention of this formula in Chief Pisani's records or in the affidavits of City Manager Sullivan. Moreover, we note that, although Chief Pisani followed the IACP recommendation as to interviews, he chose to conduct the interviews by himself rather than have them performed by a three-person board, as recommended by the IACP. Then, as now, Massachusetts law required oral interviews to be given by a three-person board. *See* Mass. Gen.Laws Ann. ch. 31, § 10 (1973), *now codified at* ch. 31, § 16. Another possible explanation for the promotion list used is that, as alleged by Burns, the promotion of some of the black plaintiffs in *Kantor* was an unwritten part of the *Kantor* settlement decree.

**6.** Mass.Gen.Laws Ann. ch. 31, § 15(c), *now codified at* Mass.Gen.Laws Ann. ch. 31, § 27.

Gen.Laws Ann. ch. 31, § 2(b).[7] *See Gold-blatt v. Corporation Counsel*, 360 Mass. 660, 662, 277 N.E.2d 273, 277 (1971). This remedy is limited by Civil Service Rule 33, which permits the Civil Service Commission to refuse to hear appeals filed more than thirty days after the Director's decision.[8] Judicial review of the Commission's decision may be sought by writ of certiorari to the Massachusetts Supreme Judicial Court. *Goldblatt v. Corporation Counsel, supra.* The second avenue open to Burns was the filing of a complaint of racial discrimination in employment pursuant to the Massachusetts antidiscrimination statute. Mass.Gen. Laws Ann. ch. 151B, § 5.[9] Such a complaint, if filed within six months of the act of discrimination, precipitates an investigation and, if warranted, corrective action by the Massachusetts Commission Against Discrimination (MCAD). Judicial review of

the actions of the MCAD is available by appeal to the Superior Court and then to the Supreme Judicial Court. Mass.Gen. Laws Ann. ch. 151B, § 6. *See East Chop Tennis Club v. Mass. Comm'n Against Discrimination*, 364 Mass. 444, 305 N.E.2d 507 (1973).

Burns elected to pursue neither of these alternatives. Instead, he contacted Councilor Sullivan, in part to ask his advice and in part to use him to pressure City Manager Sullivan, who served at the pleasure of the City Council, to promote him to sergeant. Councilor Sullivan advised Burns not to cause a controversy and not to hire a lawyer. Two days later, Burns retained counsel. Burns' attorney also advised Burns not to cause a controversy over his nonpromotion. Burns followed that advice, taking no legal action until the filing of this suit on

7. Mass.Gen.Laws Ann. ch. 31, § 2(b) provides in pertinent part:

In addition to other duties imposed by this chapter and chapter thirteen the commission shall—

(a) Make investigations at its own discretion, or whenever requested in writing by the governor, the council, the general court or either branch thereof, the director, an aggrieved person, or by ten registered voters.

(b) Hear and decide all appeals from any decision or action of, or failure to act by, the director, upon application of a person aggrieved thereby[.]

8. Mass. Civil Service Rule 33 provides:

1. The Commission may decline to entertain any appeal from any decision of the Director not received within thirty days of the date of the giving of notice by the Director to the appellant, or in cases of appeals regulated by statute within any lesser period provided therein.

9. Mass.Gen.Laws Ann. ch. 151B, § 5 provides in pertinent part:

Any person claiming to be aggrieved by an alleged unlawful practice . . . may . . file with the commission a verified complaint in writing which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful practice complained of . . . which shall set forth the particulars thereof and contain such other information as may be required by the commission.

After the filing of any complaint, the chairman of the commission shall designate one of the commissioners to make, with the assistance of the commission's staff, prompt investigation in connection therewith. If such commissioner shall determine after such investigation that no probable cause exists for crediting the allegations of the complaint, the commission shall, within ten days from such determination, cause to be issued and served upon the complaint written notice of such determination, and the said complainant or his attorney may, within ten days after such service, file with the commission a written request for a preliminary hearing before the commission to determine probable cause for crediting the allegations of the complaint, and the commission shall allow such request as a matter of right; provided, however, that such a preliminary hearing shall not be subject to the provisions of chapter thirty A. If such commissioner shall determine after such investigation or preliminary hearing that probable cause exists for crediting the allegations of the complaint, he shall immediately endeavor to eliminate the unlawful practice complained of . . . . After a determination of probable cause hereunder such commissioner may also file a petition in equity in the superior court . . . . Any complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination.

June 28, 1978, nearly three years after the announcement of the promotion list.[10]

*The Due Process Claim*

■ Burns contends it was error for the district court to grant summary judgment on his claim of denial of due process because of the failure of Cambridge City Manager Sullivan and Police Chief Pisani to follow procedures mandated by Massachusetts civil service law. Although we agree that the Cambridge Police Department procedures for the 1975 sergeant promotion were irregular, *see* note 5, *supra*, we find no error in the district court's ruling that these irregularities are not constitutionally significant.

■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Ventetuolo v. Burke*, 596 F.2d 476 (1st Cir. 1979). Burns asserts no deprivation of a liberty interest, but argues that the placing of his name on the original eligibility list for promotion and the historic Cambridge Police Department practice of promoting directly from that list gave rise to a property interest. Despite the fact that the property interests protected by the Due Process Clause include interests secured by "existing rules or understandings," *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), and that some aspects of the Massachusetts civil service system may arguably create property interests, *Lavash v. Kountze*, 604 F.2d 103 (1st Cir. 1979) (question of property interest in position on eligibility list left undecided), we do not think Burns possessed a property interest in promotion to sergeant.

■ Massachusetts civil service law provides that most civil service appointments must be made from an eligibility list established as a result of a competitive examina-tion. Mass.Gen.Laws Ann. ch. 31, § 6. Burns took a written competitive examination for promotion to sergeant, placing ninth. If chief Pisani and City Manager Sullivan had selected the twenty-eight promotees from that list, Burns may well have enjoyed a protected right to promotion. However, Massachusetts law also permits oral and practical examinations to be given in conjunction with written examinations. Mass.Gen.Laws Ann. ch. 31, § 10 *now codified at* ch. 31, § 16. If, because of the results of any such additional examinations, or the consideration of other factors, such as experience, Mass.Gen.Laws Ann. ch. 31, § 22, the promoting authority decides to promote persons whose rank on the original eligibility list is lower than that of persons who are not promoted, the promoting authority must state the reasons for deviating from the order of the eligibility list. Mass. Gen.Laws Ann. ch. 31, § 15(c), *now codified at* ch. 31, § 27. Chief Pisani and City Manager Sullivan exercised the option provided by Massachusetts civil service law and considered the results of an oral examination and possibly other factors. The Personnel Administrator accepted City Manager Sullivan's statement that the twenty-two persons promoted over Burns and others were "better qualified." Thus, while Burns may have had certain expectations as a result of his rank on the eligibility list any such expectations were substantially diminished by the ability under state law of Chief Pisani and City Manager Sullivan to consider subjective factors in addition to the written examination score. In light of the qualified nature of these expectations, we find that Burns' interest in becoming a sergeant did not rise to the level of a property interest entitled to constitutional protection. *See Bishop v. Wood*, 426 U.S. 341, 345 & n.8, 96 S.Ct. 2074, 2077 & n.8, 48 L.Ed.2d 684 (1976). Having found that there is no substantive property interest in the promotion there is no need for us to examine further Burns' claim that the procedures actually followed were not such as

---

**10.** A case upon which Burns relies heavily, *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), was decided the same day he filed this suit.

state law required. *Cf. Slotnick v. Staviskey,* 560 F.2d 31, 34 (1st Cir. 1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) (that state law requires certain procedures does not give those procedures a federal constitutional dimension).

### The Equal Protection Claim

In response to Burns' suit, the defendants Sullivan pleaded specific denials and affirmative defenses, including expiration of the statute of limitations. Fed.R.Civ.P. 8(c). Although the district court did not reach the issue of tolling of the statute of limitations, we do. We agree with the defendants that, under the most analogous state statute, time had run on Burns' claim of denial of equal protection.

█ The question is the applicable Massachusetts statute of limitations. Since the Civil Rights Acts have no limitations provisions, "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction . . . is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern . . . cause[s]" brought under the Acts. 42 U.S.C. § 1988. This mandated adoption of state law comports with the general federal policy of recognition and use of a state statute of limitations when the federal statute contains none. *See, e. g., Chattanooga Foundry v. Atlanta,* 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (Sherman Antitrust Act); *Campbell v. Haverhill,* 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895) (patent infringement); *Hayden v. Oriental Mills,* 15 F. 605 (1st Cir. 1883) (patent infringement). It is now well established that the federal courts will look to the state statute or remedy "most analogous" to the particular civil rights cause of action to determine the time limitation under the Civil Rights Acts. *Runyon v. McCrary,* 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 318 (1st Cir. 1978). Generally, the applicable statute of limitations is that which the state would enforce had an action

seeking similar relief been brought in state court. *Swan v. Board of Higher Education,* 319 F.2d 56, 59 (2d Cir. 1963) (Marshall, J.). The "most analogous" state law will be applied unless it is "inconsistent with the federal policy underlying the cause of action under consideration." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). *Cf. Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (Louisiana survivorship statute applied to Section 1983 suit, resulting in abatement of action because of death of plaintiff). *See also Johnson v. Davis,* 582 F.2d 1316 (4th Cir. 1978) (one year Virginia statute of limitations for federal civil rights actions discriminates unreasonably against federal rights where similar state rights protected by longer statutes of limitations).

█ Determination of the applicable state statute of limitations requires consideration of four questions: (1) the nature of the federal cause of action, *see Davis v. United States Steel Supply,* 581 F.2d 335, 337 (3d Cir. 1978); (2) the analogous state causes of action; (3) the state statutes of limitations for those causes of action; and (4) which of the state statutes of limitations is the most appropriate under federal law, *see Johnson v. Railway Express Agency, Inc.,* 421 U.S. at 462 n.7, 95 S.Ct. at 1721 n.7. *See generally Ware v. Colonial Provision Co., Inc.,* 458 F.Supp. 1193, 1194–95 (D.Mass.1978).

Burns premised his suit on 42 U.S.C. §§ 1983 and 1985(3). The district court properly characterized his action as alleging denial of equal protection in the form of racial discrimination by a public entity.

When Burns was passed over for promotion, he had available to him two analogous state causes of action. He had an automatic right of appeal, within the state civil service system in which he could have alleged failure to follow state civil service law. Mass.Gen.Laws Ann. ch. 31, § 2(b). This cause of action expired in thirty days. Mass. Civil Service Rule 33. The second cause of action was a specific complaint of racial discrimination which had to be filed

with the Massachusetts Commission Against Discrimination within six months of his nonpromotion. Mass.Gen.Laws Ann. ch. 151B.

We are aware that three separate district court decisions in the District of Massachusetts have held that actions under the Civil Rights Act sound in tort and, therefore, the Massachusetts general tort statute of limitations should be applied. *Ware v. Colonial Provision Co., Inc.,* 458 F.Supp. 1193; *DeLuca v. Sullivan,* 450 F.Supp. 736 (D.Mass.1977); *Holden v. Boston Housing Authority,* 400 F.Supp. 399 (D.Mass.1975). While we often defer to district court interpretations of state law, we find these decisions are not conclusive in this case.

In *Ware* and *Holden,* the question was whether the case was controlled by the six-year statute of limitations for contracts or the two-year tort statute.[11] No other Massachusetts statutes of limitations were considered. *Ware* involved a suit for racial discrimination in hiring and discharge brought against a private employer under 42 U.S.C. § 1981. The more analogous statute of limitation was found to be the one governing tort actions. In *Holden,* no mention was made of the more specific remedy for wrongful discharge of a public employee: a writ of mandamus filed with the Supreme Judicial Court within six months of the discharge. Mass.Gen.Laws Ann. ch. 31, § 46A.[12] Consequently, we think *Ware* and *Holden* must be limited to the statutes of limitations actually considered.

In *DeLuca v. Sullivan,* the same court that heard Burns' suit held that the action of other officers passed over in the 1975 Cambridge Police Department sergeant promotion was not barred by expiration of the thirty-day civil service statute of limitations. *DeLuca v. Sullivan,* 450 F.Supp. at

738. The court's principal rationale was not that the statute was not the "most analogous," but, rather, that so short a period of time "fails to correspond to the needs of civil rights plaintiffs to have available a reasonable period of time in which to have access to the federal courts." *Id.* The court also relied on what it perceived to be this circuit's rule that the then two-year Massachusetts tort statute of limitations must be applied to civil rights actions.[13] We consider these reasons in reverse order.

Although we have consistently held that civil rights actions brought by dismissed or mistreated employees sound in tort rather than in contract, *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 318 (1st Cir. 1978); *Graffals Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir. 1977), we have never indicated that a general tort statute of limitations is automatically to be used in place of limitations contained in state statutes specifically tailored to deal with the plaintiff's cause of action. *See, e. g., Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d at 318 (Puerto Rico statute regulating political discharge of employees more analogous than general tort statute, but contained no specific statute of limitations). Determination of the "most analogous" state statute requires a careful analysis of state law.

While we see merit in the *DeLuca* court's reasoning that civil rights plaintiffs may need more than thirty days to file a civil rights complaint, we think a six-month limitation reasonable. Although it may take more than six months to properly prepare a civil rights case, a complaint meeting the requirement of Fed.R.Civ.P. 8(a) can surely be filed in that time. And amendments to the complaint and supplemental pleadings may be sought after suit is brought. Fed. R.Civ.P. 15. Moreover, if the plaintiff is required to exhaust his state administrative

---

**11.** The general tort statute of limitations was increased to three years by 1973 Mass. Acts ch. 777, § 1.

**12.** This remedy is now codified at Mass.Gen. Laws Ann. ch. 31, § 42.

**13.** Mass.Gen.Laws Ann. ch. 260, § 2A now provides:

Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.

remedies, a matter of some dispute, *see* note 14 *infra,* his case will have already been prepared and with little, if any, modification can easily be filed within six months of the decision of the state agency.

There are important policy reasons for using the time limitations of a state statute that protects the same rights the plaintiff seeks to vindicate by resort to the federal Civil Rights Acts. Assuming no requirement of exhaustion, a rule providing a three-year statute of limitations will allow state employees to bide their time and use the federal courts, bypassing the state administrative proceedings. Two unfortunate results will follow. First, the general government policy, observed at both the state and federal levels, of prompt resolution of personnel disputes, will be thwarted. Second, without any showing that state administrative procedures will not provide the plaintiff with due process and protect against constitutional violations, *see Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), the federal courts will become surrogate state personnel departments.[14] *See Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976); *DiPiro v. Taft,* 584 F.2d 1 (1st Cir. 1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979).

Finally, the Massachusetts general tort statute of limitations is clearly intended to be used in conjunction with conventional tort, contract and replevin actions for which there is no specific statute of limitations. While, in certain circumstances, such conventional actions may be the "most analogous" actions to civil rights ac-

tions, that is so only when the state has not prohibited by statute the deprivation of the specific civil right at bar. Where, as here, the state has provided a specific remedy, complete with statute of limitations, for racial discrimination in public employment and promotion, actions under the federal Civil Rights Acts alleging racial discrimination by the state must be governed by that statute of limitations. In our view, although this rule shortens considerably the time in which an aggrieved person may bring a Section 1983 action for racial discrimination in public employment, it conflicts with no federal policy and enhances the ability of the state to resolve its own personnel problems. The time period is no shorter than the six-month period available to federal and state employees under Title VII of the Civil Rights Act of 1964 for initiation of a complaint of racial discrimination in employment. 42 U.S.C. § 2000e–5(e). *See Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In addition, we note that the entire Massachusetts civil service system is built upon a policy of prompt initiation and resolution of public employee personnel actions. *See, e. g., Report of Special Committee on Civil Service Laws, Rules and Regulations, 1930 House Doc. No. 1001* at 9; *Brooks v. Registrar of Motor Vehicles,* 1 Mass.App. 78, 80, 294 N.E.2d 487, 489 (1973); *see generally* Mass.Gen. Laws Ann. ch. 31, §§ 1 *et seq.* This rule gives a plaintiff six months from either the date of the alleged act of discrimination or final state administrative adjudication of the claim of discrimination to seek relief pursuant to Section 1983. Under this stat-

---

**14.** Since we decide Burns' claims on other grounds, we address his failure to exhaust state administrative remedies only to the extent necessary to note the unsettled state of the law in this area, *compare Gibson v. Berryhill,* 411 U.S. 564, 574–75, 93 S.Ct. 1689, 1695–96, 36 L.Ed.2d 488 (1973), *with Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct. 1691, 1694–95, 44 L.Ed.2d 274 (1975), and to observe that the same strong reasons for recognizing state limitation of action policies in personnel matters also argue for recognition of the primacy of viable state personnel dispute resolution mechanisms. *See Wishart v. McDonald,* 500 F.2d 1110, 1114, n.4

(1st Cir. 1974); *Dunham v. Crosby,* 435 F.2d 1177, 1180–81 n.2 (1st Cir. 1970). *See also Eisen v. Eastman,* 421 U.S. 560, 569 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); *Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases,* 41 U.Chi.L.Rev. 537 (1974). We note further that Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(c), requires persons alleging racial discrimination in employment in a state that has administrative mechanisms which can provide relief to give that state system at least sixty days to provide such relief before proceeding under Title VII.

ute of limitations, Burns' equal protection claim expired in January of 1976.

*The First Amendment Claim*

 Burns' final contention on appeal, that the advice he solicited from Councilor Sullivan restrained or chilled his freedom of speech, is without a scintilla of merit. He voluntarily sought Councilor Sullivan's advice and assistance in pressuring the City Manager. Councilor Sullivan made no threat; the advice was solicited, offered and accepted for the purpose of achieving Burns' promotion. *See generally Weiss v. Patrick*, 453 F.Supp. 717 (D.R.I.), aff'd 588 F.2d 818 (1st Cir. 1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979). While Burns rejected Councilor Sullivan's advice not to hire an attorney, he accepted the advice of both his attorney and Councilor Sullivan not to cause a controversy over his nonpromotion.[15] Burns strains credulity in contending that he followed Councilor Sullivan's advice and not that of his attorney. Finally, even if Councilor Sullivan alone had advised Burns, we know of no facts alleged in this case that would take Councilor Sullivan's actions outside the public officials' qualified, good faith immunity from Civil Rights Acts damage liability. *See Scheuer v. Rhodes*, 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–92, 40 L.Ed.2d 90 (1974); *Maiorana v. MacDonald*, 596 F.2d 1072 (1st Cir. 1979). In these circumstances, the district court properly granted summary judgment as to the claimed first amendment violation. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Maiorana v. MacDonald*, 596 F.2d at 1077.

*Affirmed.*

---

**15.** If Burns had not received similar advice from his attorney, Councilor Sullivan's advice still would not have given substance to Burns' first amendment claim, but it might have given Burns some assistance in overcoming the statute of limitations. *See Dunham v. Crosby*, 435

F.2d 1177, 1180 (1st Cir. 1970) (school superintendent's active discouragement of use of employee appeal procedure by teacher and personal initiation of extra-statutory procedures held to bar superintendent's reliance on exhaustion.)