# LITTLE PEOPLE'S SCHOOL, INC. *vs.* RATE SETTING COMMISSION.

Suffolk. May 4, 1988. — July 14, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Administrative Law*, Regulations, Rate setting, Agency, Judicial review. *Rate Setting Commission.*

On appeal to the Division of Administrative Law Appeals from a decision of the Rate Setting Commission disallowing certain costs, a provider of educational services sustained its burden of proof simply by showing that the commission had applied its own regulations incorrectly, and the provider was not required, in addition, to establish affirmatively what result the Rate Setting Commission should have reached. [18-19]

CIVIL ACTION commenced in the Superior Court Department on March 21, 1985.

The case was heard by *Elbert Tuttle*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Seth Emmer* for the plaintiff.

*H. Reed Witherby*, Assistant Attorney General, for the defendant.

HENNESSEY, C.J. The plaintiff, Little People's School, Inc. (the school), appeals from the entry in the Superior Court of summary judgment in favor of the defendant Rate Setting Commission (the commission). The school had sought, pursuant to G. L. c. 6A, § 36, and c. 30A, § 14, judicial review and reversal of a decision of the Division of Administrative Law Appeals (the division)[1] upholding a rate set by the commission for the school for the fiscal year 1981.

[1] The Division of Administrative Law Appeals was formerly the Division of Hearings Officers. G. L. c. 7, § 4H, as appearing in St. 1983, c. 683. The term "division" will be used to refer to that agency under both its old

The school is a nonprofit charitable corporation that provides educational services to children with special needs, and is remunerated primarily by various municipalities and by the Commonwealth at rates set annually by the commission. For fiscal 1981, the commission disallowed certain costs incurred by the school for the purchase of professional services from a related party, Metropolitan Centers for Speech and Hearing Therapy, Inc. (Metropolitan), a for-profit corporation.[2] These costs were disallowed to the extent that they exceeded the cost to Metropolitan of providing the services, on the basis of an unwritten commission policy of disallowing all profits in related party transactions.

The school appealed the disallowance of these costs to the division, pursuant to G. L. c. 6A, § 36. It contended first that, because the commission had allowed the same type of costs in prior years, it was required to allow them for fiscal 1981, under our ruling in *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 104 (1975) (requiring reasoned consistency in agency decision making as to costs includable in a rate base). It also contended that the commission's then-applicable regulations, 114.4 Code Mass. Regs. §§ 3.05 (7), 3.03 (17) and 3.02 (21), did not require the disallowance of all profit to a related party, but instead required allowance of the costs if they were found to be reasonable when judged by application of the so-called "prudent buyer concept." Under this concept, the reasonableness of amounts paid in related party transactions is determined by comparing them with market prices or amounts paid by comparable operating agencies or fiscal intermediaries. After hearing, the division ruled that the principle of *Boston Gas Co.*, *supra*, did not require allowance of the disputed costs, but that the commission's regulation

name and its new name. *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n*, 401 Mass. 357, 358 n.1 (1987).

[2] Both parties concede that the school and Metropolitan are "related parties," within the meaning of that term as used in the commission's regulations in effect for fiscal 1981, because Metropolitan's director and sole shareholder was also an officer and a director of the school.

did require it to determine the reasonableness of the costs by application of the prudent buyer concept. Because the commission conceded that it had not done so, the case was remanded to it with instructions to perform a good-faith prudent buyer analysis of the disputed costs.

After ostensibly performing this analysis, the commission again disallowed the costs on the ground that they exceeded the amounts paid by comparable agencies for similar services. The school again appealed to the division. After hearing, the division ruled that the commission improperly performed the analysis. The commission had compared the school's costs to those of comparable agencies on the basis of cost "per staff" (cost divided by the number of professionals rendering services). But the school argued, and the division agreed, that the costs should be compared on a "per student" basis (cost divided by the number of students serviced). The division further ruled that the school's evidence as to its and comparable agencies' costs per student demonstrated that the school's costs were reasonable, and ordered the commission to allow them.

On the commission's motion for reconsideration, the division found that the school had improperly performed the prudent buyer analysis by using projected figures in place of the comparable agencies' actual costs, and that, as a result, the school's analysis was invalid. It specifically reaffirmed the principle that the prudent buyer analysis should be performed by comparing costs on a per student basis, but reversed its previous decision to allow the disputed costs on the ground that the school had not "carried its burden of rebutting the prudent buyer analysis performed by [the commission]." The effect of this was to deny relief to the school by excluding the disputed costs.

A Superior Court judge upheld this decision, and the school appealed. We took the case on our own motion, and now reverse the Superior Court's judgment and remand the case to the commission for further proceedings consistent with this opinion.

On this appeal, the school contends that the judge erred in affirming the division's ruling that the school had not sustained

its burden of proof. We agree. The school's burden was to show that the rate set by the commission for fiscal 1981 was inadequate, unfair, or unreasonable to it, based on, among other things, its costs. G. L. c. 6A, § 36. *Cabot Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 686, 688 (1971). See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 655 (1971). The division ruled that the commission's own regulation required it to determine the reasonableness of the school's costs by comparing them to those of comparable agencies on a per student basis, and found that the commission had not done so. These conclusions are unchallenged, and, in any event, are not clearly erroneous or unsupported by the evidence. Together they establish that the commission's decision to disallow the disputed costs was arrived at by an improper method. The school sustained its burden of proof by showing that the agency failed to apply correctly its own regulations in determining a rate.[3] See *Cliff House Nursing Home, Inc.* v. *Rate Setting Comm'n*, 16 Mass. App. Ct. 300, 306-307 (1983). Hence, the proper remedy is to reverse the judgment and remand the case to the commission, see *id.*, with instructions to perform the required prudent buyer analysis by comparing the school's costs to those of comparable agencies, on a per student basis, and to allow them if, after analysis, they are not found to be unreasonable.

*So ordered.*

[3] The commission is the "ground level rate setter," *Woodland Estates, Inc.* v. *Rate Setting Comm'n*, 15 Mass. App. Ct. 297, 301 (1983), and bears "the sole responsibility for establishing fair, reasonable and adequate rates to be paid providers of health care services by governmental units," G. L. c. 6A, § 32 (1986 ed.). Thus, to sustain its burden of proving that the rate set by the commission is inadequate, unfair, or unreasonable to it, G. L. c. 6A, § 36; *Cabot Nursing Home, Inc.*, *supra*; see *Palm Manor Nursing Home, Inc.*, *supra*, the school need only show that the commission disregarded or misapplied its own regulation in determining the rate. It need not affirmatively establish what the correct rate should be. Compare the different statutory framework applicable to public utility rate making, under which the utility is the first-instance rate setter, and the department of public utilities performs a supervisory role. G. L. c. 164, § 94 (1986 ed.). In this setting, when new rates submitted by a utility are challenged by the department, the burden is on the utility, as the rate setter, affirmatively to show that the rates are proper. *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.*, 352 Mass. 18, 24 (1967), and case cited.