WOODLAND ESTATES, INC. *vs.* RATE SETTING COMMISSION
& another.[1]

Suffolk. January 12, 1983. — February 11, 1983.

Present: GREANEY, KAPLAN, & DREBEN, JJ.

*Rate Setting Commission. Division of Hearings Officers.*

Procedures for reimbursement for certain nursing care expenses estab-
lished by the Rate Setting Commission and appearing in a section of
the controlling regulations entitled "Revisions in Interim Rates of Pay-
ment" were also applicable in the determination of final rates. [299]
A provider of nursing home care which had failed to file an application
for reimbursement of excess nursing costs as required by regulations of
the Rate Setting Commission was not entitled to have the commission
include those costs in calculating the rate for payment to the provider.
[299]

CIVIL ACTION commenced in the Superior Court on May
21, 1976.

The case was heard by *Lynch,* J.

*Richard H. Gens* for the plaintiff.

*William L. Pardee,* Assistant Attorney General, for the
defendants.

GREANEY, J.  We have before us a judgment of the Su-
perior Court affirming a decision of the Division of Hear-
ings Officers (division), see G. L. c. 6A, § 36, and G. L.
c. 30A, § 14, concerning the final 1972 daily rate set for the
plaintiff's nursing home by the Rate Setting Commission
(commission).  The plaintiff questions the division's deter-
mination that the commission had properly disallowed cer-
tain nursing salary costs in computing the rate.

[1] The Division of Hearings Officers.

The division found that in 1972 the plaintiff had incurred "$253,330 in reasonable nursing salary costs . . . in order to provide necessary nursing care to [its] patients." The division concluded, however, that the commission could refuse to consider $57,290 of those costs in its final rate calculations because the plaintiff did not comply with the commission's regulations governing reimbursement for nursing care expenses which exceed the cost of the presumptive levels of required care established by commission regulation no. 72-1(5)(c) (Feb., 1972).[2] Under the scheme of things prevailing in 1972 (as required by the combination of commission regulations nos. 72-1[8] & [5][c][Feb., 1972]), a long-term care facility which exceeded the presumptive maximum number of hours of required nursing care could only gain recognition of the costs of that excess care in its rate if (1) "the need for [additional nursing] coverage is supported by written requirements of the Department of Public Health," and (2) "[a]pplication for recognition of the cost for such required additional nursing care coverage [is] made in accordance with [regulation no. 72-1(8)(1972)]."[3]

Here the division found that the plaintiff expanded its nursing care after receiving a "deficiency letter" from the Department of Public Health indicating that "the home provided inadequate nursing care for the requirements of its patients," many of whom were bedridden and required more than the presumptive limits of care. The division ruled, however, in light of the plaintiff's concession that it had not undertaken the application process specified in reg-

---

[2] Commission regulation no. 72-1(5)(c) (1972) recognizes a system of patient classification based on the level of nursing care required, and sets presumptive maximum hours of required care for each of four specified levels. It provides for reimbursement of the reasonable cost of care to those maximum limits and allows for recognition of the cost of presumptively excessive care in the circumstances and under the procedures discussed in the text, *infra*.

[3] Commission regulation no. 72-1(8) (1972), which is cast in terms of "interim rates," in pertinent part sets forth the necessary components of an "application for a revision" of rates by the commission, and the considerations to be applied by the commission in its determination.

ulation no. 72-1(8), that the plaintiff was not entitled to reimbursement for the excess costs. The plaintiff does not attack the validity of the commission's regulations or the commission's establishment and use in rate setting of presumptive guidelines for the provision of nursing services to different classes of patients. Instead the plaintiff makes two arguments. First, it claims that the procedures in regulation no. 72-1(8) do not apply to final rates. Second, it contends that the regulations work an injustice "as applied" and that the division should have been guided by the command of the statute that "[o]n appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider," G. L. c. 6A, § 36, inserted by St. 1973, c. 1229, § 2, to the exclusion of questions of procedure in the initial rate-setting phase.

1. Little need be said about the first argument. While the application procedure appears in a section of the controlling regulations entitled "Revisions in Interim Rates of Payment," the procedure therein prescribed is expressly incorporated in regulation no. 72-1(5)(c), governing final rates such as the rate in issue here.

2. As to the second argument, the plaintiff urges that the commission's insistence on procedural regularity has had the effect of denying it a rate reflecting its actual costs. See G. L. c. 6A, § 32, third par. (inserted by St. 1973, c. 1229, § 2).[4] The Legislature made it quite clear, however, in the

---

[4] The parties, the division, and the judge in the Superior Court appear to have treated G. L. c. 6A, §§ 31-36 (inserted by St. 1973, c. 1229, § 2), which became effective on July 1, 1974, as the statute controlling the case. The plaintiff's expenses were incurred and the final rate determination was made pursuant to G. L. c. 7, §§ 30K-30P (as appearing in St. 1968, c. 492, § 3), the predecessor to the 1973 statute. Notice of appeal to the division was apparently filed prior to the effective date of the superseding 1973 statute, but the complaint itself was filed after the statute's effective date. We note that the provisions of both statutes are substantially identical in all relevant respects. For purposes of convenience and consistency with the record as developed by the parties, we will refer to the statutory language in G. L. c. 6A, §§ 32 & 36, inserted by St. 1973, c. 1229, § 2.

ninth paragraph of the same statute that "[t]he commission shall promulgate rules and regulations for the administration of its duties and the determination of rates as are herein required subject to the procedures prescribed by chapter thirty A." In fashioning the regulations at issue, the commission acted in conformity with the statute's express directions, under the general principle that "administrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'" *Massachusetts Elec. Co. v. Department of Pub. Util.*, 383 Mass. 675, 676 n.1 (1981), quoting from *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978). "A court is no more authorized to overlook [a] valid regulation . . . [concerning] applications . . . than it is to overlook any other valid requirement for the receipt of benefits." *Schweiker v. Hansen*, 450 U.S. 785, 790 (1981). The plaintiff presented no justification to the division for its failure to comply with the commission's procedure. That failure left the division with no way of knowing what the commission might have done with respect to the additional costs had it received, in the first instance, an application for reimbursement incorporating the department's letter and containing documentation of the plaintiff's response to the deficiencies noted therein.[5] Further, the absence of procedural compliance had relevance to the rule that, in matters affecting rates, the division's broad powers arise only upon review of action initially taken by the commission. See discussion in *Cliff House Nursing Home, Inc. v. Rate Setting Commn.*, 378 Mass. 189, 193-196 (1979). We think the division properly relied upon the foregoing considerations, which concern matters of ad-

---

[5] There is some question whether the deficiency letter from the Department of Public Health was a "written requirement" for additional care as that term is used in the commission's regulations. The division's conclusion that the letter was inadequate to support reimbursement for the extra expenses may have been premature since the commission never had an application before it and never passed upon the letter's effect.

ministrative regularity, in rejecting the plaintiff's request to include in its rate a sizeable amount of expenses which had never been formally presented to, or passed upon, by the commission. We also think the division was appropriately sensitive to the fact (as expressed in different words in its various rulings) that adoption of the plaintiff's position would, for all practical purposes, render the commission's regulations a nullity and make the division the ground level rate setter — a role reserved to the commission. We concur with the division's conclusion that a regulated party should not be heard to complain when, due to its failure to comply with lawful regulations, the broadly stated purposes of the enabling legislation have not been fulfilled.[6]

*Judgment affirmed.*

---

[6] The plaintiff points out in its brief that the commission's regulations do not specify any time period within which an application for reimbursement of excess nursing costs must be filed, and suggests that "an application could be made today, or at the [appeal] hearing, or by virtue of the appeal itself." The division, in ruling on the plaintiff's motion for reconsideration, referred to this contention obliquely, asserting, correctly we think, that applications are required by regulation to be filed with the commission, and that nothing which occurs in the appeal hearing could be construed as an application.

The commission has not responded in its brief to the plaintiff's contention that it can now file a claim for reimbursement. In general, we note that blame for the duration of this dispute over a 1972 rate cannot be laid entirely at the plaintiff's doorstep. The commission did not set the plaintiff's final rate until the middle of 1974, and the division's decision was not filed until 1976. Judgment was not entered in the Superior Court until 1981. We also note the possible applicability of that part of 1972 regulation no. 72-1(8) which provides that "[n]o application for a revision will be considered . . . while an appeal . . . is pending . . . ." Beyond the preceding observations which are apparent from the record, we express no opinion on the question whether the commission could now allow an application to revise the plaintiff's 1972 final rate.