BAYSTATE MEDICAL CENTER, INC. *vs.* RATE SETTING
COMMISSION & another.[1]

No. 92-P-1549.

Suffolk. January 21, 1994. - April 14, 1994.

Present: ARMSTRONG, FINE, & GILLERMAN, JJ.

*Rate Setting Commission. Division of Administrative Law Appeals. Medicaid. Hospital,* Medicaid reimbursement. *Administrative Law,* Rate setting.

In a proceeding brought by a hospital before the Division of Administrative Law Appeals seeking a redetermination of a medical reimbursement rate set by the Rate Setting Commission, the administrative magistrate correctly declined to consider evidence which the hospital had not presented to the commission for its initial consideration. [347-348]

CIVIL ACTION commenced in the Superior Court Department on May 4, 1987.

The case was heard by *Gordon L. Doerfer,* J., on a motion for summary judgment.

*Mark A. Borreliz (Edward H. Seksay* with him) for the plaintiff.

*Judy A. Levenson,* Assistant Attorney General, for the defendants.

GILLERMAN, J. In October, 1981, the Rate Setting Commission (commission), see G. L. c. 6A, § 32, established the prospective Medicaid reimbursement rate for the plaintiff (Baystate) for its fiscal year 1982. One month later, Baystate filed an appeal with the Division of Administrative Law Appeals (DALA), requesting a redetermination of rates that were "adequate, fair, and reasonable." See G. L. c. 6A, § 36, inserted by St. 1973, c. 1229, § 2.

---

[1]Division of Administrative Law Appeals.

On September 30, 1982, Baystate filed with the commission three requests for administrative adjustments to its 1982 rates. The requests rested on various grounds, three of which, following the commission's rulings in May, 1984, were incorporated into Baystate's appeal to the DALA. Of those three, one is material to these proceedings: the claim that the commission erroneously failed to remove certain occupancy penalties[2] retroactively to the beginning of the fiscal year (October 1, 1981), and not merely to the date of the temporary reduction of licensed bed days at Baystate (September 27, 1982). On the first day of the hearing before the DALA in April, 1986 (almost four years after Baystate filed its original requests for administrative adjustments), Baystate added a fourth ground for the removal of the occupancy penalties — a claim that had not previously been put before the commission and which is the subject of this appeal: that the commission had imposed occupancy penalties despite circumstances that made the imposition inequitable. See 114.1 Code Mass. Regs. § 3.14(1)(g) (1981).

In support of its claim that equitable considerations precluded the imposition of any occupancy penalty, Baystate introduced evidence before the DALA that (1) Baystate did not incur any extra costs attributable to its excess licensed bed capacity; (2) Baystate reasonably believed that there was no need to seek temporary reduction in the number of its licensed beds at the beginning of fiscal year 1982; and (3) Baystate was obliged (because of pending construction) to maintain otherwise unfilled beds in order to have "shuffle space" available.

The administrative magistrate declined to consider the evidence of equitable considerations. She found that "[i]f the

---

[2]The DALA administrative magistrate defined an occupancy penalty thus: "When a hospital's patient census or occupancy falls below certain levels (different levels for medical-surgical, pediatric and maternity) — calculated on the basis of [actual] bed days — then the [c]ommission uses imputed census figures (calculated as percentages of licensed bed days available) in its rate setting calculation formulas, instead of a hospital's actual bed days. The difference between the actual and imputed bed days is referred to as an occupancy penalty."

Hospital had submitted to the [c]ommission the data it submitted at the hearing on the equitable considerations, then . . . the [c]ommission would have been obliged to consider granting relief . . . [But] such data was not submitted [to the commission]." Citing *Woodland Estates, Inc. v. Rate Setting Commn.*, 15 Mass. App. Ct. 297 (1983), the magistrate denied Baystate's claim for vacating the occupancy penalty.[3]

A judge of the Superior Court agreed with the DALA. "[While] [s]ection 3.14 does not *per se* require the plaintiff to file an appeal for administrative adjustment with the [c]ommission before it can seek such relief from the DALA . . . both the *Woodland Estates* and *Salem* [*Hosp. v. Rate Setting Commn.*, 26 Mass App. Ct. 323 (1988)] decisions . . . prohibit the DALA from correcting rates based upon data not presented to the [c]ommission."

We agree. As we wrote in *Salem Hosp.*, this is "not a matter of barren insistence on procedural regularity. There is a practical difference between asking for allowance of an excess cost in advance, when there may be a wide range of options, policies and compromises available, and justifying it after the fact, when the choices are to approve or disapprove." *Id.* at 326.[4] Further, as we wrote in *Woodland*, 15

---

[3]In response to Baystate's application for reconsideration, the DALA found that if the evidence submitted to the DALA on the new, equitable ground had been submitted to the commission, and had the commission denied that claim, the DALA would have ordered the commission to recompute the 1982 rates without the occupancy penalty.

[4]In *Salem Hosp.*, unlike the present case, the "raw material . . . had already been run by the commission in the proper time sequence." 26 Mass. App. Ct. at 326-327. Thus we concluded in *Salem Hosp.* that the "role of the commission as ground level rate setter is not usurped." *Id.* at 327. Baystate's argument that the present case — where the raw material was *not* run by the commission — is controlled by *Salem Hosp.* therefore has no merit. So too, Baystate's argument that *Woodland* is distinguishable because in this case Baystate submitted all necessary information to the commission (viz., the completed statistical and financial forms of the Medicaid cost report) ignores what they elsewhere contend: that the evidence supporting the argument that the occupancy penalty should be removed for equitable reasons, was not, and need not be, submitted to the commission.

Mass. App. Ct. at 300, ". . . in matters affecting rates, the division's broad powers arise only upon review of action initially taken by the commission."

In the present case, the issue of the occupancy penalty was before the commission on the request of Baystate for administrative adjustment based upon evidence submitted to the commission, and the issue was decided adversely to Baystate. Now, before the DALA, Baystate again seeks to reverse the occupancy penalty, this time with new evidence neither submitted to, nor considered by, the commission. The failure of Baystate to present its entire case to the commission when it sought to remove the occupancy permit has been left unexplained, but it cannot be ignored or excused. "Parties cannot steer administrative agencies into error and complain of it on [quasi] judicial review." *Shamrock Liquors, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 333, 335 (1979).

Were we to adopt the argument of Baystate, as we wrote in *Woodland*, the result "would, for all practical purposes, . . . make the [DALA] the ground level rate setter — a role reserved to the commission." 15 Mass. App. Ct. at 301. It is "too late to raise a claim before [the DALA] if the point had not been raised before [the commission]." *M.H. Gordon & Son, Inc.* v. *Alcoholic Beverages Control Commn.*, 386 Mass. 64, 68 (1982). *Shamrock Liquors*, 7 Mass. App. Ct. at 335. There is nothing to the contrary in *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189 (1979).

*Judgment affirmed.*