BOARD OF SELECTMEN OF TRURO *vs.* OUTDOOR
ADVERTISING BOARD.

Barnstable.    January 6, 1964. — February 4, 1964.

Present: CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Sign. Advertising. Equity Jurisdiction,* Sign, Zoning enforcement, Declaratory relief. *Zoning,* Enforcement.

Equitable relief by injunction against maintenance of a sign in alleged violation of a town by-law cannot be obtained under G. L. c. 93, § 31, as appearing in St. 1955, c. 584, § 7.    [758–759]

Selectmen of a town who, after it had been notified of an application to the Outdoor Advertising Board for a permit for a sign, did not seek a hearing by the board on the application as afforded by G. L. c. 93, § 29A, inserted by St. 1955, c. 584, § 5, and a regulation of the board, nor seek judicial review under G. L. c. 30A, § 14, of action of the board granting the permit, were not entitled to equitable relief under G. L. c. 40A, § 22, against maintenance of the sign on the alleged ground that it was in violation of the town's zoning by-law.    [759]

In a suit in equity by the selectmen of a town seeking declaratory relief as to the propriety of maintenance, in alleged violation of the town's by-laws, of a sign for which a permit had been granted by the Outdoor Advertising Board, the bill should be dismissed as a matter of discretion in the circumstances where it appeared that the selectmen had not pursued administrative remedies available to them before the board prior to the granting of the permit, nor sought judicial review under G. L. c. 30A, § 14, of the action of the board granting it, nor presented in the suit evidence adequate for a determination of certain matters underlying suitable declaratory relief.    [759–760]

BILL IN EQUITY filed in the Superior Court on October 18, 1960.

The plaintiff appealed from a final decree entered after hearing by *Pecce, J.*

*S. Osborn Ball* for the plaintiff.

*Edward A. Roster,* Legal Assistant to the Attorney General, for the defendant.

CUTTER, J.    The selectmen bring this bill for declaratory and other relief concerning a sign in Truro for which the defendant (the board, see G. L. c. 16, §§ 5C, 5D, both in-

serted by St. 1955, c. 584, § 3) has purported to issue a permit to one Medeiros pursuant to G. L. c. 93, §§ 29, 29A, and 31 (see amendments by St. 1955, c. 584, §§ 4, 5, and 7). The selectmen's principal contention is that the board issued the permit in violation of the town's zoning by-law as amended[1] and also of a "protective regulation" concerning so called "off premises" signs.[2] This "protective regulation" is not shown to have been approved by the Attorney General, under G. L. c. 40, § 32 (as amended through St. 1952, c. 337). It also was alleged that the board issued the permit "without notice to" the selectmen "or hearing of any kind."

The prayers of the bill ask that the board be ordered not to issue a permit for the sign in violation of the Truro by-law and that Medeiros be ordered to remove the sign. They also seek a declaration that the board has no authority to issue permits in conflict with the Truro by-law.

The evidence is meager. The chairman of the selectmen testified that the selectmen on August 17, 1960, had refused

---

[1] The zoning by-law (art. XVIII of the town's by-laws) refers to a zoning map on file with the town clerk but not introduced in evidence. In "residential" districts (§ IV–A) there may be (1) detached one family dwellings; (2) religious, educational, and municipal uses; (3) parks and noncommercial recreational activities; (4) hospitals and convalescent homes; (5) room rentals and boarding; (6) accessory uses; (7) "customary or self home occupations"; (8) certain nonoffensive farm uses; and (9) "[s]igns . . . provided that such signs pertaining to the lease, sale, or use of a lot or building on which they are placed, do not exceed a total of six . . . square feet per sign, and . . . a total of two signs per lot or building." Certain additional uses are permitted if authorized by the board of appeals, such as aviation fields, golf clubs, cemeteries, research laboratories, nonprofit private clubs, boys' and girls' camps, and marine installations. In a "limited business" district (§ V), in addition to the uses permitted in residential districts, there may be cottage or cabin colonies, motor courts, and motels, tourist type activities, which may not be within the "business area" standard laid down in § 4A of the board's regulations (see fn. 3, *infra*). In a general business district (§ VI), in addition to uses permitted by §§ IV and V, there may be amusement places, hotels, restaurants, service stations, public utilities, retail or wholesale business, industrial uses (if authorized by the board of appeals), and certain signs not over eighteen square feet (§ VI–A [8]). The zoning by-law is stated to have been approved on various dates by the Attorney General.

[2] This "protective regulation" provides, in part, "No 'off [p]remises' sign permits will be issued for such signs to be on [t]own [w]ays except when actual hardship has been proved and authorized by the [s]electmen." We assume that "off premises" signs are signs that do not advertise an occupation or operation conducted upon the premises where the sign has been placed.

to give Medeiros an "off premise" sign permit for the sign, which is seven feet by three feet three inches (and thus larger than even the eighteen square feet signs permitted by the zoning by-law [fn. 1, *supra*] in general business districts).   Counsel stated that, apart from certain definitions, § V (limited business district) and § IV–A (9) of the zoning by-law were the relevant sections.   This statement suggests that the sign was in a limited business district, but there is no direct testimony to that effect.   A photograph of the sign and its immediate surroundings is the only proof of the general character of the neighborhood.

The chairman of the selectmen stated that he had received notice from the board that Medeiros had applied for a permit and that "[w]e turned it back to them putting a note on the bottom that we had disapproved it" because not "in the best interests of the town."   He never made demand on the board for an opportunity to be heard.   The rules and regulations of the board were in evidence.[3]

The trial judge justifiably found on this evidence that the board gave notice to the selectmen of Medeiros's application and that the selectmen "did not file any written objections to the allowance of that application, nor request an opportunity to be heard at the hearing."   He also justifiably found that, when the selectmen learned that a permit had been granted on August 23, 1960, they "did not appeal

---

[3] Section 4A provides, in part, "The [Outdoor Advertising] [d]ivision may grant permits for the erection of . . . signs . . . in areas which the [d]ivision may determine to be of a business character.   A business area shall be any section which is commercial, industrial, marketing, mercantile or on unrestricted commercial arteries adjacent to commercial enterprises."   Section 4B provides that "permits . . . shall expire on June 30 next following the date thereof, unless sooner revoked."   Renewal of permits (§ 3) may be requested.   Section 6C provides that upon receipt of an application for a permit, "notice thereof and a copy of the application will be sent by the [d]ivision to the . . . town where such . . . sign . . . is to be located.   If the . . . town objects . . . it shall, within thirty . . . days from the date of said notice, file with the [d]ivision its objections, in writing, and thereupon the [d]ivision will notify the applicant, who will be allowed ten . . . days . . . to file reasons . . . why a permit should be granted.   A hearing will be given . . . before final action . . . if requested."   Section 6E reads, in part, "All . . . signs . . . shall be of such dimensions and material as the [d]ivision may prescribe.   In the case of billboards" § 6E then specifies the dimensions "which are standard . . . in the outdoor advertising industry" subject to variations in particular cases, but lays down no standards for other signs.

from the decision of the . . . [b]oard." The judge concluded that the board granted the permit in the absence of written objections or a request for hearing from the selectmen and that, as the selectmen "offered no evidence tending to show that the . . . [b]oard did not comply with the procedural requirements of notice and hearing . . . it is to be presumed that the . . . [b]oard acted legally and in good faith." A final decree was entered declaring that board's approval of the permit was a valid exercise of the board's statutory authority and that the selectmen are not entitled to the equitable remedies sought. The selectmen appealed. The evidence is reported.

1. Billboard and sign regulation now takes place under G. L. c. 93, §§ 29–33 (as amended by St. 1955, c. 584[4]). Section 29 gives the board authority to "make, amend or repeal . . . regulations for the proper control and restriction of . . . signs . . . on public ways."[5] The last sentence of § 29 (see fn. 5) gives to towns the right further to restrict

---

[4] Court decisions concerning billboard regulation have dealt with earlier forms of the statute. Since these decisions, in addition to the 1955 amendments of the billboard regulatory statutes, the zoning enabling act (G. L. c. 40A; see St. 1954, c. 368, § 2) has been revised and the State administrative procedure act (G. L. c. 30A; see St. 1954, c. 681, § 1) has been adopted. See *Opinion of the Justices*, 333 Mass. 773, 778–779.

[5] Section 29 proceeds, "Such . . . regulations may require that said . . . signs . . . be located in business, commercial, industrial, marketing or mercantile areas, or on unrestricted commercial arteries and adjacent to commercial enterprises; may prescribe standards of size, setback and clearance, considering the public interest; may require . . . signs . . . to be licensed by the board . . . . No permit . . . for a . . . sign . . . shall be issued unless written notice of the application therefor stating the proposed location shall have been given at least thirty days earlier to the . . . town in which the . . . sign . . . is to be located. . . . [T]owns may further regulate and restrict . . . signs . . . within their. . . . limits by . . . by-law, not inconsistent with" §§ 29–33, or with the rules and regulations. Section 29A reads, in part, "Whenever, within thirty days after notification to the . . . town, the board shall have received written objection to an application for a permit, such permit shall issue only after consideration by the board of such objection, and whenever, within thirty days after notification to the . . . town, the board shall have received written notice of intention to appear in opposition to the application, the board shall issue such permit only after a public hearing on due notice to the applicant and the . . . town. Any . . . town . . . aggrieved by a decision of the executive director with respect to the issuance or revocation of a license or permit for the erection or maintenance of a . . . sign . . . may, within fifteen days thereafter, appeal from such decision to the board, which may, after a public hearing . . . order such decision to be affirmed, modified or annulled. . . . The findings of the board on matters heard before it shall be final except with respect to matters of law."

signs within their limits.   See *Milton* v. *Donnelly,* 306 Mass. 451, 458.   We assume (without deciding) that the power, created by the last sentence of § 29, to pass such a by-law may be exercised by including an apt provision in a zoning by-law as well as by a wholly separate by-law.   Cf. *Inspector of Bldgs. of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 88–89, holding that an amendment of the then existing zoning enabling act to permit the regulation of "structures" did not supersede the then existing provisions of G. L. c. 93, § 29.   Cf. also *General Outdoor Advertising Co. Inc.* v. *Department of Pub. Works,* 289 Mass. 149, 196–197.

2.   The selectmen have not pursued their administrative remedies before the board, nor have they sought review under G. L. c. 30A, § 14 (1), from the board's action granting the permit.   Such a proceeding would have brought before us the evidence and record before the board, and would have permitted review of whether the board's decision involved error of law and whether it was supported by substantial evidence.

Instead, the selectmen have sought equitable relief, in part under G. L. c. 231A, and in part, apparently, under G. L. c. 93, § 31 (as amended through St. 1955, c. 584, § 7) which gives to this court and to the Superior Court "jurisdiction in equity upon petition of the attorney general, of any . . . town or any officer thereof, or of any interested party, to restrain the . . . maintenance of any . . . sign . . . maintained in violation of any . . . regulation, adopted by the board . . . and to order the removal . . . of such . . . sign . . . as a nuisance."   In *Milton* v. *Donnelly,* 306 Mass. 451, under an earlier form of § 31, which also provided similar jurisdiction with respect to signs maintained in violation of town by-laws, this court ordered the removal of a sign so maintained.   Section 31 thereafter was revised by St. 1955, c. 584, § 7, to exclude the reference to by-law violations, although without explanation of the reasons for the change.   See 1955 House Bills Nos. 750, 1478, 1734, 2557.   The change indicates that review of the

board's action should take place under c. 30A, § 14 (1), and that affirmative equitable relief for violation of a town by-law concerning signs cannot now be obtained under § 31, as amended.   In view of the 1955 amendment of § 31, we think that G. L. c. 40A, § 22, should not be applied to enforce the zoning by-law with respect to a sign maintained under an outstanding permit from the board, at least until the enforcing officials' administrative remedies and remedies under c. 30A, § 14 (1), have been adequately pursued.

3.   We next consider whether declaratory relief alone should be granted.   Although c. 231A, § 8, provides that declaratory relief is to be broadly construed and administered, c. 231A, § 3, permits a court to refuse to grant such relief where it would not terminate the controversy (as in *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370, where all appropriate parties were not before the court) or for other sufficient reasons.   Certain such reasons exist in this case.

(a) The failure of the selectmen to present to the board their objections to the permit and to seek review under G. L. c. 30A, § 14 (1), requires caution in granting declaratory relief, without having before us all the evidence that should have been before the board (in addition to any that the applicant may have submitted).   If the selectmen had presented a complete case to the board, the board's action with respect to the permit might have been different.[6]

(b) The selectmen have not presented to the Superior Court evidence concerning important matters necessary to intelligent declaratory relief.   Except by vague implication they have not shown in what zoning district the sign in controversy is placed.   Apart from one photograph there is no evidence concerning the character of the neighborhood.

(c) If the sign is, as we suspect, in a limited business district (in which only certain tourist accommodations are allowed in addition to uses permitted in a residential dis-

---

[6] The board's regulations (see fn. 3) suggest that the selectmen may still have opportunity to present a full record before the board in connection with objections to a renewal of the permit or upon a petition for its revocation.

trict, see fn. 1), evidence of the character of the neighborhood may be pertinent in determining whether there is in fact any conflict between §§ IV–A (9) and V of the by-law, on the one hand, and § 4A of the regulations, on the other hand. This evidence also might be appropriate in determining whether the board had or could have had substantial evidence before it to justify it in determining (in accordance with a fair application of the standard contained in § 4A) that the sign was in a "business area." See *General Outdoor Advertising Co. Inc.* v. *Department of Pub. Works,* 289 Mass. 149, 192–193, 196–198. Some evidence also might be appropriate with respect to the background of § 6E of the board's regulations, which purports to reserve to the board the determination of the size of signs in particular instances. Whether this regulation contains a standard for the board's action, "sufficiently definite in description" (see the *General Outdoor Advertising Co. Inc.* case, at p. 192), may be pertinent in determining whether the regulation is valid as to this sign which is not a billboard (see fn. 3), and thus whether there is any real conflict between the by-law and § 6E. See *Milton* v. *Donnelly,* 306 Mass. 451, 458.

For these reasons and because a declaration will deal with issues which should not be decided upon an inadequate record, we think that declaratory relief should be denied as matter of discretion.

4. Because they may not now receive the affirmative relief which they seek and because declaratory relief should be denied as matter of discretion, the final decree is to be modified to provide merely that the bill be dismissed. As so modified it is affirmed.

*So ordered.*