EDNA M. AMRHEIN vs. ADOLF T. AMRHEIN.

No. 88-P-1235.

Worcester. December 14, 1989. - October 5, 1990.

Present: WARNER, C.J., ARMSTRONG, & KAPLAN, JJ.

*Divorce and Separation*, Alimony, Division of property. *Probate Court*, Parties.

In a divorce proceeding, the judge was warranted in concluding that an attachment on the marital home had been procured with the collusion of the husband and that a purported trust created by the husband was a vehicle to conceal the husband's income and assets. [336-339]

In a divorce proceeding, the judge incorrectly ordered the husband to execute a mortgage on certain real estate to secure his payment of an award of counsel fees to the wife, where the property was allegedly held by the husband in trust for the couple's children and where the husband, in his capacity as trustee, and the children had not been joined as parties. [339-341]

In a divorce proceeding, no error appeared in the judge's award of alimony to the wife, including ordering conveyances of certain real property as lump sum alimony. [341-342]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on August 29, 1983.

The case was heard by *John J. Moynihan*, J.

*Paul P. Perocchi* (*Patricia S. Fernandez* with him) for Adolf T. Amrhein.

*Roger J. Brunelle* for Edna M. Amrhein.

ARMSTRONG, J. The husband appeals from a judgment awarding the wife a divorce (for cruel and abusive treatment), alimony, the marital home (where the husband has stayed only occasionally since the early 1970's), and four lots of undetermined value on the Belgrade Lakes in Maine. The judge treated much of the husband's testimony and that of the witnesses called by him as untrue or misleading and the

trust through which the husband has conducted many of his land transactions as a sham.

The evidence justified a harsh appraisal on the husband's character. In broad outline, the evidence suggests, the husband has been receiving disability support payments (presently $3,102 every four weeks, tax free) from the Federal government since 1972. He has engaged (while claiming to have no income other than his disability payments) in several apparently lucrative occupations since that time, including, among others,[1] an aviation business, a car-rental business, and a used car business (the last supplying cars, which have included Mercedeses and Porsches, and several of its dealer plates to the husband and the members of his family for personal use). The husband flies, skis, water skis, and takes vacations frequently with his girlfriend (Germany, Italy, France, Switzerland, Aruba, Africa, Australia). He controls numerous pieces of real estate (receiving rental income from some of them), most of which are held in the name of third persons.

The wife had filed for divorce on August 29, 1983. This should not have come as a surprise to the husband, who had established a separate home in the early or mid-1970's, where he lives with his girlfriend. The wife's initiative angered him, however. He went to the marital home, ripped out the telephones and the electrical service, removed the wife's dealer plate, brought a truck and emptied the house of the items she valued most (silverware, antiques, her collection of Hummel figurines), removed the liner from the swimming pool, then returned to rip out the electrical service a second time after it had been repaired.

Within the next year or two, the husband's own home in Ashburnham, held in his name as trustee of Triple A Agents Realty Trust, was transferred to the parties' daughter, Lisa, along with an adjoining lot. Another Ashburnham lot was transferred to a son, Erich. A property in Lancaster was sold for $62,000, and the husband used most of the proceeds to

[1] The wife testified that the husband has (or had at one time) interests in an antique business, a machine-tool business, and a trucking business.

pay off the mortgage debt of a property in Clinton which was the headquarters of the husband's used car business. (The Clinton property, which formerly belonged to the wife's parents, was purchased by the husband about six months before the divorce action was filed. Title had been taken in Erich's name to conceal it from claimants in a threatened tort action.) The marital home, held by the husband and wife as tenants by the entirety, worth about $110,000 net of mortgage, was attached a month after the wife filed for divorce by one Johann Ehemann, who ostensibly brought an action against the husband on notes totaling $88,000 plus interest and attorney's fees. The husband promptly admitted the allegations of Ehemann's complaint. Ehemann, it developed, was a close friend of the husband's family in Germany and was warmly disposed towards the husband. By the time of the trial, Ehemann had died, leaving part of his estate to the husband and the Amrhein children. The judge had ample reason to regard the suit as collusive and the notes, one purportedly ten years old, as fabrications.

The judge also had ample reason to doubt the reality of the trust. The husband's claim that his mother had been involved in setting it up (denied by the attorney who drew the instrument) and had funded it was not substantiated (the three purported remittance records, one of which predated the trust by four years, are nonspecific as to purpose and plainly inadequate to have funded various purchases allegedly made by the trust), the absence of trust accounting records, and a pattern of conveyances that indicates the husband treated the alleged properties as his own whenever it suited his purposes justified a conclusion, in all the circumstances, that the trust was not established for the benefit of the children (who attended school on financial aid) but more likely as a vehicle to conceal the husband's income and assets. The husband had ample opportunity to present a coherent account of his finances more favorable to himself but chose instead to absent himself from the trial (he flew to Germany) before his direct examination was completed and

before his wife could cross-examine him. See *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 559 (1982).

With one exception, the husband's procedural arguments are without merit. The wife's complaint did not specifically seek a transfer of property, but it did seek alimony and general relief. Apart from the pleadings, the parties tried the issue of ownership of the trust assets without objection: indeed, the husband's trial counsel repeatedly and expressly sought a determination by the court that the trust assets were not the husband's. No objection was taken to the failure to join the husband as trustee or to join the purported trust beneficiaries. The absence of a party — even one who is deemed indispensable — is not jurisdictional and may be waived by the parties, although the judge may take notice of it of his own accord. See Mass.R.Dom.Rel.P. 12(b)(7) and (h)(3) (1975), and Wright, Miller, & Kane, Federal Practice & Procedure § 1611, at 171-178 (1986). A finding by the judge in these circumstances that a particular asset is owned by a party individually, rather than in trust, is binding on the parties to the action but not on persons not served. To the extent that the judge's findings relate only to the calculation of the parties' net worth and sources of income, the husband is in no position to complain. Compare *Serino* v. *Serino*, 6 Mass. App. Ct. 926 (1978).

The assets ordered transferred to the wife were not purported trust assets. The husband held title to the marital home at 10 Langen Road, Lancaster, individually, and the four unvalued lots on the Belgrade Lakes in Maine were held by the husband and wife as tenants by the entirety. The judgment affects trust property in one particular way: the husband is ordered to execute a mortgage on the real estate at 56 Mistletoe Drive, Sunset Lake, Ashburnham, the husband's home, to secure the award of counsel fees to the wife.[2]

---

[2] The award, $18,160, was justified by the merry chase to which the husband put the wife, not only through his numerous delays and failures to appear but also by forcing her to resort to multiple court proceedings to obtain support, discovery, and permission for an appraiser to view properties held ostensibly in trust or in children's names.

The 56 Mistletoe Drive property, purchased originally in the husband's name individually, was transferred thereafter several times: to the husband as trustee, back to the husband individually, to the husband as trustee a second time, then to Lisa (the daughter) after the wife filed for divorce, then to the husband as trustee a third time. The evidence amply warranted the finding that it belonged to the husband individually. Any mortgage written pursuant to the judgment, however, will adversely affect the interests of third persons who are not bound by that finding. In these circumstances it is customary to join as parties (often in a separate suit that will be tried together with the divorce action) persons whose interests, if any, will necessarily be affected by a judgment favorable to the party trying to reach the property. See, e.g., *Bak* v. *Bak*, 24 Mass. App. Ct. 608 (1987)(separate suit to enjoin transfer of fraudulently conveyed property, holding it, in effect, as security for the payment of alimony); *Aronson* v. *Aronson*, 25 Mass. App. Ct. 164, 167-168 (1987)(separate suit to set aside fraudulent conveyance).

Normally the trustee is an indispensable party to an adjudication of rights of beneficiaries in a trust. *Sadler* v. *Industrial Trust Co.*, 327 Mass. 10, 13 (1951). "In suits or actions against a trustee by strangers who have claims of one kind or another against the trust estate, where the litigation does not involve any conflict between the trustee and the beneficiaries or any contest between the beneficiaries themselves, the trustee is generally held to represent sufficiently the estate, and, in the absence of some contrary provision in the trust instrument, there is no need to make the cestuis que trust parties." *Gulda* v. *Second Natl. Bank*, 323 Mass. 100, 102-103 (1948). This case *does* involve an inherent conflict of interests between the trustee (the husband) and the beneficiaries (the Amrhein children), who "are entitled to be heard in order to protect their rights and should not be compelled to depend upon the defence made by the trustee." *Id.* at 103. So much of the judgment as orders the husband to execute a mortgage of 56 Mistletoe Drive to secure his obligation to pay the wife's counsel fees must be vacated, without

prejudice to the wife's seeking (if she should so choose) substitute security. Alternatively, the wife may file a motion to amend the pleadings by way of adding a complaint to set aside one or more conveyances as fraudulent (see *DuMont* v. *Godbey*, 382 Mass. 234, 237 [1981]), naming as parties defendant the purported beneficiaries and the husband in his capacity as trustee.[3] An order allowing such a motion should give an opportunity for the introduction of further evidence.

The judge did not err in awarding the wife weekly alimony that, added to her present sources of income, exceeds her stated need (or her financial statement) by roughly $135 per week. Her present sources of income include roughly $209 per week from boarders, whom she was forced to take in to pay such bills as the mortgage, taxes, and utilities for the marital home when the husband cut off her support, and $107 per week from her employment at the Perkins School, which she feels she can no longer handle physically. We do not view the award of the marital home and the Belgrade Lakes lots as a property division but as alimony of the lump-sum variety. See *Surabian* v. *Surabian*, 362 Mass. 342, 348 (1972). The judge did not use the term equitable division, and he did not purport to assign all the major assets that he found to be marital property. Indeed, the judge would be somewhat handicapped in framing an equitable division, being ignorant of the husband's income (other than his disability payments) and not being in a position to adjudicate the extent of the marital assets with binding effect on third parties. "An order for equitable division should normally encompass all substantial assets jointly owned and any separate property representing accretion during the marriage and should be based on a comprehensive analysis of all major elements of contribution by the spouses during the marriage. An equitable division should not be ordered in a case where

---

[3] An execution would be fruitless to reach the 56 Mistletoe Drive property because of the fact that the record title is in the husband as trustee and the beneficial interests nominally in the children. See *Foster* v. *Evans*, 384 Mass. 687, 693-694 (1981). As to jurisdiction, see also G. L. c. 215, § 6, par. 2(iii).

the evidence introduced by the parties does not warrant findings comprehensive of those factors." *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 17 (1977).[4] Lest the provisions of the judgment ordering conveyances of the properties in question be misinterpreted as an equitable division, possibly precluding an equitable division in the future (see *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 324-326 [1979]; *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367-368 [1985]), the judgment should be clarified to state expressly that the conveyances are in the nature of alimony.[5]

The judgment is to be modified by striking the order that the husband execute a mortgage of the 56 Mistletoe Road property and by stating that the conveyances of the Langen Road and Belgrade Lakes properties are in the nature of alimony. As so modified, the judgment is affirmed, subject, however, to further modification in the Probate and Family Court if the wife should file, within three weeks after rescript, a motion for a substitute security for the payment of counsel fees. The wife shall have her costs of appeal and reasonable attorney's fee for the appeal, in an amount to be determined by the probate judge.

*So ordered.*

---

[4] Evasiveness or concealment by a party, however, may justify inferences of fact that will support an equitable division. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 822 (1985).

[5] No serious doubt exists that the conveyances are appropriately ordered when viewed on alimony principles. The marital home, where the wife has lived since 1974, is basic to preserve the wife's station in life. The Belgrade Lake properties, purchased in 1971 for an undisclosed price, can be viewed either as giving the wife the means to meet her expenses if she should give up her job at Perkins School and cease taking in boarders, or as replacing the inheritance ($17,000) she received from a parent during the inordinately protracted divorce proceedings and which she depleted to pay expenses after the husband cut off support.