WILLIAM R. PLAMONDON & others[1] *vs.* OUTCEPTS
MANAGEMENT & CONSULTING, LLC, & others.[2]

No. 11-P-1071.

Bristol. February 3, 2012. - June 11, 2012.

Present: KATZMANN, WOLOHOJIAN, & AGNES, JJ.

*Billboard. Massachusetts Office of Outdoor Advertising. Administrative Law,* Exhaustion of remedies. *Practice, Civil,* Parties, Waiver.

Discussion of the statutory and regulatory scheme governing outdoor advertising. [850-852]

Plaintiffs seeking to challenge the erection of a billboard near their homes were not required to exhaust administrative remedies before bringing an equitable action in Superior Court under G. L. c. 93, § 31. [852]

In a Superior Court action brought by plaintiffs challenging the erection of a billboard near their homes, the judge, in finding in favor of the plaintiffs, correctly concluded that the defendants had failed to show that the area in which their new billboard was located was not predominantly residential when viewed from the principal highway that the billboard was to face. [853-854]

CIVIL ACTION commenced in the Superior Court Department on June 3, 2010.

The case was heard by *Robert C. Cosgrove,* J.

*Paul G. Boylan* for Outcepts Management & Consulting, LLC.

*Jason K. Brolsma* for the plaintiffs.

WOLOHOJIAN, J. After a bench trial that included a view, a Superior Court judge concluded that the defendants had failed to show that the area in which their new billboard is "located is not predominantly residential, agricultural or open space or natural area" "when viewed from the principal highway upon

---

[1]Theresa R. Plamondon and Albert Piva.

[2]A.B.C. Floor Covering, Inc.; Michael Rodrigues; and Ralph G. Souza, as the building inspector of the town of Westport.

which the sign is to face." 711 Code Mass. Regs. § 3.07(3) (2010). The judge, therefore, found in favor of the plaintiffs (who live nearby) and ordered that the billboard not be illuminated at night and that it be removed within ninety days.[3] We now affirm.

*Background.* We summarize the trial judge's extensive and detailed findings.[4] In 2009, the defendant Michael Rodrigues, upon whose property in Westport a billboard had stood for about forty years, agreed to partner with the defendant Outcepts Management & Consulting, LLC (Outcepts), to replace an existing billboard. The new billboard, like the previous one, was to face Route 195. The side of Route 195 on which the billboard was to be erected is predominantly residential. The opposite side of Route 195 is undeveloped land. Within a 500-foot radius of the billboard there are seven homes, a large tract of undeveloped residential/agricultural land, and two garages used for commercial storage.[5] Within a 1,000-foot radius, there are twenty homes. The plaintiff Albert Piva owns and lives at a

---

[3]The judgment was stayed pending this appeal.

[4]The judge's findings are amply supported by the record. Indeed, the defendants challenge only certain findings relating to nighttime illumination of the sign. However, no aspect of our decision or analysis turns on those findings, and we therefore need not, and do not, address the defendants' argument in that regard.

[5]Both garage properties are limited by variances, and one of them is also limited by a Land Court order. Pursuant to a 1984 variance, the first property (26 Cleveland Street) may be used only for "the storage of carpeting and tiles." The only activities permitted at 26 Cleveland Street are storage and the occasional use of small trucks to pick up and drop off materials for storage. Pursuant to a 1991 variance, the second property (42 Cleveland Street) may be used only for storage of one owner-operated tractor trailer, two owner-operated trailers, and one owner-operated service truck. The owner of 42 Cleveland Street received multiple cease and desist orders between October, 2009, and March 16, 2010. The March 16, 2010, order states that "this is a residential area and *NO COMMERICAL USE IS ALLOWED*. Any commercial activity must go before the Board of Appeals" (emphasis in original). After being denied a permit by the board of appeals, the owner of 42 Cleveland Street and the town of Westport executed an agreement for judgment and permanent injunction with the Land Court. That agreement stated that the owner shall "[i]mmediately and permanently *CEASE* the commercial excavating business at 42 Cleveland Street" *and* "permanently *REMOVE* all commercial vehicles and equipment," and that the owner may only "[k]eep one tractor truck, two trailers and one service truck . . . owned and operated by the [property] owner" (emphasis in original).

property directly abutting the location of the billboard.[6] The Plamondon plaintiffs live within 500 feet of the billboard.[7] The entire area at issue is zoned residential.

Because the new billboard would be different from the old one,[8] it had no grandfather status[9] and was required to meet all of the requirements for new billboards as contained in G. L. c. 93 and 711 Code Mass. Regs. § 3.00 et seq. (2010). To that end, in 2010 Outcepts filed two written applications with the Massachusetts Office of Outdoor Advertising (MOOA), formerly known as the Outdoor Advertising Board (OAB).[10]

Before November, 2009, the OAB customarily had held public hearings to review permit applications. However, as part of c. 25 of the Acts of 2009, "An Act Modernizing the Transporta-

---

[6]Piva's residence is most directly affected by the new, higher billboard, particularly when it is lit at night, which he described as being like a "television in the sky." It is visible from most of his home, including the back yard and pool area. The judge credited Piva's testimony that the old sign was hardly visible from his property, while the new sign is much more obtrusive and has diminished his enjoyment of his property.

[7]The new billboard is visible from the Plamondons' residence, including their kitchen, living room, bathroom and certain bedrooms, their front yard, north side yard, and portions of their back yard. However, because the billboard is approximately 600 feet away, it does not loom particularly large. The judge credited Theresa Plamondon's testimony that, while the old billboard was not visible from her house, the new billboard is clearly visible from her home and property.

[8]The new billboard differs in five significant ways. First, it is about thirty feet taller. Second, it is a "V" shaped board, providing greater visibility from the highway than a back-to-back or single-face board. Third, it has less surface area; where the prior billboard was fifteen by fifty feet, the new billboard is fourteen feet by forty-eight feet. Fourth, it is a "changing face" billboard, capable of displaying three advertisements per face. Fifth, it is lit with light-emitting diode (LED) lamps hidden and mounted at the bottom of the billboard's catwalk, as opposed to the prior sign's floodlights. The judge credited the defendants' evidence that the new design provided several benefits: its greater height means less tree trimming to maintain the sign's visibility; the "V" shape exposes less of the sign's face to the neighborhood; and the LED lighting minimizes "backwash lighting," or "light trespass."

[9]There is no dispute that the new billboard was not grandfathered under the old permit. The judge found that the building inspector's indication on the permit application to the contrary was a mistake, and no party challenges this finding.

[10]Two applications were required because, according to Edward Farley, director of MOOA, a separate application is required for each face of a two-sided billboard.

tion Systems of the Commonwealth," the OAB was in essence dismantled. As a result, permitting decisions that had previously been made by the OAB after a process that included a public hearing were, as of 2010, made solely by the MOOA's director, Edward Farley. The MOOA's process includes no mechanism for notice to, or hearing from, abutters or other interested parties before the issuance of a permit.

Farley did not visit the site before acting on the applications here, and he approved them without public comment or discussion. He indicated his decision by checking "Application Approved" on the permit application forms, which he then signed and dated. The forms required an explanation only in the event of a denial, and so Farley's reasons for approving the permits do not appear in writing.

In acting on applications to approve billboards, Farley relies on information provided by the applicant, as well as the information from the MOOA's field inspectors. In this case, Marc Plante, a field inspector for MOOA, visited the location for the proposed billboard and reported that there were two businesses (i.e., the storage garages referenced above) within 500 feet and that the area was not residential in character.[11] For purposes of making this assessment, he defined and considered the "area" as only the land encompassing the billboard and the two storage garages (the two structures closest to the billboard).[12] Plante did not consider the remainder of the neighborhood, including the remainder of the 500-foot radius around the billboard, even though Farley testified that the MOOA uses a 500-foot radius to determine whether an area is of a business character.

Farley also relied on information provided in the permit applications, specifically in the sections certified by Ralph G. Souza, the Westport building inspector.[13] Souza certified that

---

[11]This latter characterization was consistent with previous MOOA annual field inspections.

[12]Plante, together with another field inspector, walked around the storage garages, observed them from the exterior, and inferred that they were businesses. They did not enter the structures or make inquiry to confirm whether the properties were in fact operated as businesses. Farley characterized this process as an observation, and not an investigation.

[13]Peter McClary, who was the president of Outcepts, completed the forms, and Souza signed them thereafter.

(1) the proposed billboard was grandfathered under the Westport zoning by-law (a statement the parties agree is incorrect) (see note 9, *supra*),[14] and (2) the billboard would be located in an area zoned "residential/replacing existing billboard on property commercially used as preexisting nonconforming use."

Farley approved the applications on March 11, 2010. In the last week of March, plaintiff Theresa R. Plamondon (Plamondon), unaware that the old billboard had been taken down, saw a flatbed trailer carrying steel tubes down the street and realized that a new billboard was being constructed. She complained to Souza, who, after a site visit, saw that the new sign exceeded the specified height and delivered a stop work order. That order was lifted after Souza received revised documentation of the sign height.

Plamondon next sought relief from Farley, director of MOOA, on the ground that the requirements of 711 Code Mass. Regs. §§ 3.00 et seq. had not been met. Specifically, she stated that the billboard violated 711 Code Mass. Regs. § 3.07(3)(b) because it was placed in a residential area. Farley responded that the municipality, and not the MOOA, determines whether the area is residential and that the MOOA would take no further action in response to Plamondon's request for relief. Plamondon wrote back, saying that "the issue is not the town zoning laws, it is . . . that the applicant didn't . . . and cannot meet the requirements of 711 CMR, 3.00 et seq.," which the MOOA has the authority to enforce. It appears that Farley did not respond.

Plamondon also sought relief from the town. On April 26, 2010, Souza advised her in writing that "the new sign structure is not a nonconforming structure as to zoning and that . . . [it] does not expand the nonconforming commercial use of the Property so as to require zoning relief." Souza also informed her that she could appeal his "zoning determinations" to the Westport board of appeals, and his "determination under the State Building Code" to the State Building Code Appeals Board. She pursued neither avenue of relief.

---

[14]There are no provisions of the Westport zoning by-law conferring protected status for billboards. Rather, art. 5.2.1 of the by-law provides that the status of signs shall be determined by "[t]he provisions of Section[s] 29-33, Chapter 93 G. L., and the Rules and Regulations adopted thereunder by the Outdoor Advertising Division of the Massachusetts Highway Department."

Instead, the plaintiffs filed this action in Superior Court, seeking injunctive relief pursuant to G. L. c. 93, § 31.

*Discussion.* We begin by describing the relevant statutory and regulatory landscape. Article 50 of the Amendments to the Massachusetts Constitution[15] (ratified and adopted in 1918) confers plenary power on the Legislature to regulate and restrict outdoor advertising. *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 158 (1935). That power is delegable, *Milton* v. *Donnelly*, 306 Mass. 451, 455 (1940), and pursuant to G. L. c. 93, § 29, the Legislature has delegated to the OAB[16] the power to make rules and regulations governing billboards. "Such rules and regulations may require that said billboards . . . be located in business, commercial, industrial, marketing or mercantile areas." G. L. c. 93, § 29, amended by St. 1955, c. 584, § 4. No billboard may be erected or maintained unless it conforms to the rules and regulations established under G. L. c. 93, § 29. See 711 Code Mass. Regs. § 3.02(2)(a) (2010). Those rules and regulations are contained in 711 Code Mass. Regs. §§ 3.00 et seq.

At issue in this case is 711 Code Mass. Regs. § 3.07, which provides:

> "(3) No permit shall be granted or renewed for a sign that is not located in an area of a business character. An area shall be deemed to be of business character only if, *when viewed from the principal highway* upon which the sign is to face, *both* of the following requirements are met:
>
>> "(a) At least two separate business, industrial or commercial activities are being conducted within a distance of 500 feet from the proposed location of the sign, measuring from such proposed location to the buildings or parking lots or other places of actual business, industrial or commercial activity. . . .
>>
>> "(b) The area in which the sign is to be located is

---

[15] "Advertising on public ways, in public places and on private property within public view may be regulated and restricted by law." Massachusetts Constitution, Amendments, art. 50.

[16] The parties have not briefed, and we have not considered, whether that power was transferred to the MOOA, as part of c. 25 of the Acts of 2009, "An Act Modernizing the Transportation Systems of the Commonwealth."

not predominantly residential, agricultural or open space or natural area." (Emphasis added.)

The Legislature's use of the word "both" plainly signifies that the conditions of subsections (a) and (b) are separate and conjunctive; they must each be satisfied in order for a permit to issue. Moreover, the fact that subsection (b) (which requires that the area not be predominantly residential) must be satisfied in addition to subsection (a) (which requires that two businesses be located within 500 feet) indicates that subsection (b) requires proof of something in addition to what is required to satisfy subsection (a). Put another way, there would be no need for subsection (b) if all that were required to obtain a permit was the presence of two businesses within 500 feet. Since we do not interpret statutes in such a way as to render any provision inoperative, or surplusage, see *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010), subsection (b) necessarily requires some evidence that the neighborhood is of a business character in addition to the presence of two businesses within 500 feet.

In addition to enabling the promulgation of rules and regulations, c. 93 also creates two avenues of relief for those seeking to challenge the erection or maintenance of a billboard. The first of these allows applicants, and cities and towns in which the proposed billboard is to be located, to appeal adverse permitting decisions to the OAB. G. L. c. 93, § 29A.[17] This section does not create an administrative remedy for others (such as abutters) who may have an interest in, or be aggrieved by, a permitting decision. Instead, such persons must follow the avenue provided in G. L. c. 93, § 31, amended by St. 1955, c. 584, § 7:

"The supreme judicial and superior courts shall have jurisdiction in equity upon petition of the attorney general, of any city or town or any officer thereof, *or of any interested party*, to restrain the erection or maintenance of

---

[17]"Any applicant for a permit, or any city or town wherein a permit is to be issued, aggrieved by a decision of the executive director with respect to the issuance or revocation of a license or permit for the erection or maintenance of a billboard, sign or other advertising device, may within fifteen days thereafter, appeal from such decision to the [OAB], which may, after a public hearing held on due notice, order such decision to be affirmed, modified or annulled." G. L. c. 93, § 29A, inserted by St. 1955, c. 584, § 5.

any billboard, sign or other device erected or maintained in violation of any rule, or regulation, adopted by the [OAB] under section twenty-nine, and to order the removal or abatement of such billboard, sign or device as a nuisance" (emphasis added).

This is the section the plaintiffs invoked when bringing this action.

We now turn to the specific issues raised on appeal.

*Exhaustion.* The defendants argue, as a threshold matter, that the Superior Court lacked jurisdiction because the plaintiffs failed to exhaust their administrative remedies. We consider this issue to be controlled in all material respects by *General Elec. Co.* v. *Maurice Callahan & Sons*, 2 Mass. App. Ct. 124, 130-131 (1974). As we have set out above, there was no administrative route of relief available to the plaintiffs under c. 93 and, therefore, there was no administrative remedy they failed to exhaust. *Ibid.* Neither the statutory nor the regulatory scheme requires notice to abutters or other interested parties, nor are such persons given a right or opportunity to be heard in the administrative process. Indeed, when Plamondon asked the MOOA to review its permitting decision, she was informed that it would take no further action. The plaintiffs' only available mechanism for challenging the MOOA's decision was to bring an equitable action under G. L. c. 93, § 31.

*Indispensable party.* Also as a threshold matter, the defendants argue that the MOOA is an indispensable party, Mass. R.Civ.P. 19(a), 365 Mass. 765 (1974), and its absence deprived the Superior Court of jurisdiction. This argument disregards the proceedings below. The MOOA was named as a defendant in the amended complaint. The MOOA then moved to be dismissed on the ground that it was immune from suit under G. L. c. 258, § 10(*e*),[18] a proposition with which the judge agreed. The defendants did not oppose that motion, nor did they at any point below contend that the MOOA was an indispensable party. The issue is accordingly waived. See *Seekonk* v. *John J. McHale &*

---

[18]General Laws c. 258, § 10(*e*), amended by St. 1993, c. 495, § 57, retains sovereign immunity against "any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization."

*Sons*, 325 Mass. 271, 274 (1950); *Amrhein* v. *Amrhein*, 29 Mass. App. Ct. 336, 339 (1990) (absence of indispensable party is nonjurisdictional and may be waived).

*Merits.* The judge, after a trial that included a view, found that the area around the billboard was predominantly residential as viewed from the highway. 711 Code Mass. Regs. § 3.07(3). The judge correctly determined that the regulation requires an evaluation of the area as it is viewed from the highway, and that neither Farley nor the MOOA field inspectors had observed or considered the area from that perspective. The crux of the defendants' appeal is their contention that there was an insufficient evidentiary basis for the judge's decision.

Although this is not an appeal from an administrative decision pursuant to G. L. c. 30A, but rather an independent equitable action, the judge employed the highly deferential c. 30A standard of review. The judge reasoned that to do otherwise would result in differing standards of review depending solely on whether review was being sought by cities, towns, or applicants under G. L. c. 93, § 29A, or other interested persons under G. L. c. 93, § 31.[19] However, G. L. c. 93, § 31, neither states nor suggests that equitable actions brought pursuant to its terms are subject to the provisions of c. 30A. And we note that G. L. c. 93, § 31, is not, strictly speaking, a mechanism by which to review agency decisions. It creates instead an equitable cause of action for interested persons, such as abutters, who are not statutorily entitled to notice of, or participation in, the agency process. Equitable relief under the statute is limited to removal or abatement in instances where a billboard has been erected or maintained in violation of any rule or regulation adopted under G. L. c. 93, § 29.

We leave to another day the determination of the correct standard to be employed in actions brought pursuant to G. L. c. 93, § 31. Here, the undisputed record showed that the new billboard, as a matter of law, in two respects did not satisfy the requirements of 711 Code Mass. Regs. § 3.07. First, as the

_____

[19] Although § 31 extends also to cities and towns, we have previously held that they must instead seek relief from an adverse permitting decision via G. L. c. 30A, § 14(1), and such appeals are subject to review under the c. 30A standard. *Selectmen of Truro* v. *Outdoor Advertising Bd.*, 346 Mass. 754, 759 (1964).

judge found, the MOOA did not consider the characteristics of the neighborhood as viewed from the highway. Second, the MOOA ignored the word "both" in § 3.07, and thereby gave no independent meaning to § 3.07(b). Here, the presence of two businesses within 500 feet satisfied subsection (a) but there was nothing more to satisfy the independent requirements of subsection (b). We do not mean to suggest that the presence of two businesses could not be considered by the MOOA in determining whether the neighborhood was primarily residential. However, it could not rely solely on the two businesses without considering the entire composition and character of the relevant area.

Finally, we note that the evidence before the judge — supplemented by his firsthand observation of the area — amply supported his conclusion that the area around the billboard is not primarily of a business character as viewed from the highway and that the requirements of 711 Code Mass. Regs. § 3.07 were not satisfied. He was accordingly well within his discretion, as well as within the parameters of G. L. c. 93, § 31, in ordering the removal of the billboard.

For these reasons, the judgment of the Superior Court is affirmed.

*So ordered.*